38 N.J. Super. 593 (1956)
120 A.2d 260
THEODORE GRIECO, EXECUTOR OF THE LAST WILL AND TESTAMENT OF PALMA GRIECO, DECEASED, PLAINTIFF-APPELLANT,
v.
VINCENZO GRIECO, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 23, 1956.
Decided January 31, 1956.
*594 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. James A. Major argued the cause for appellant.
Mr. Frederick Klaessig argued the cause for respondent.
The opinion of the court was delivered by JAYNE, J.A.D.
Vincenzo and Palma Grieco were united in marriage many years ago and brought forth children including among others a son Theodore and a daughter Theresa. Palma Grieco, the mother, died testate on September 20, 1951 at the age of 68 years, nominating her son Theodore to serve as executor and trustee in the administration *595 of her estate. Theodore qualified and assumed his representative duties. He was the principal beneficiary of the will.
Theresa, to whom her mother bequeathed the nominal sum of $1, instituted an action in the Chancery Division of this court to recover from the decedent's estate the reasonable value of the personal services she had rendered in the care of her mother from August 5, 1946 until the latter's death on September 20, 1951. In that action she acquired on June 12, 1954 a final judgment against the executor in the sum of $4,000.
The executor's father, Vincenzo Grieco, survived his deceased wife, Palma, and in that situation the executor has unsuccessfully sought in the present action against his father the equitable relief requiring the latter to exonerate the decedent's estate from the payment of Theresa's judgment. He failed in that endeavor and appeals.
Initially in our appellate review we must place the alleged cause of action in its proper socket and realize that the remedy called "exoneration" is the creature of equity jurisprudence and is granted or denied upon considerations of fairness and the elements of remedial justice. That which the plaintiff desired to establish is an equitable indebtedness.
We must also accord to the prior adjudication of Theresa's right of recovery for her services pursuant to an implied agreement with her mother the respect and recognition to which it is entitled. The fact that the deceased herself contractually engaged her daughter's services was determined against the denial of the executor in the previous action. It is noticed, too, that the executor did not seek the opportunity to usher into the prior action the present defendant as a party thereto "who is or may be liable to him for all or part of the plaintiff's claim against him." R.R. 4:14-1.
With that resurrection herein of the scenery of the past, we associate with it the testimony introduced at the trial of the present case.
It is informational to quote the following conclusions which Judge Stanton derived from the testimony and expressed *596 in his memorandum in the present action on March 22, 1955.
"2. In ruling on the claim of Theresa Grieco, I said this in my oral conclusions of May 13, 1954:
`Theresa came in there, dealing with her mother and the implied promise was that of the mother to pay her. The credit here was not extended to the father and I so conclude.'
3. I might let the matter rest on the foregoing, but under the circumstances of this case, I will make a further observation. The decedent and her husband lived in a state of separation under the same roof for a period of approximately thirty years. At the time Theresa Grieco returned to the home to take care of her mother, he had no income except the negligible amount that he received for parking cars. All the real estate was in the name of the decedent, except the Christie Lane parcel, which was held by the entirety. The decedent managed all the realty until her illness, when she continued to do so with the aid of her children. Her husband had no part at all in the management of the property and received none of the income. During the period of time with which we are concerned, he was financially dependent upon the decedent and she supplied him with a home and food.
It satisfactorily appears that the services rendered here were at the request of the decedent and upon her individual credit, although there was no express contract. There is no doubt at all but that she assumed responsibility for payment exclusive of any legal liability of her husband. She was clearly the principal in the transaction.
The husband was present in the home when Theresa returned there to care for the decedent and it is clear that the latter did not look to him for payment, nor did the decedent expect that he would pay Theresa or reimburse the decedent."
And so, it is at once observed that in the prior as well as in the present action the court resolved factually that the testatrix contracted for the services as principal on her own behalf and not as the agent of her husband. It may be stated to be the broad general rule that the relation of principal and agent is not absolutely inherent in the marital relation. While marriage may be a relevant circumstance, it is the general principle that the wife is the agent of her husband only by virtue of his authority expressly conferred or reasonably to be implied from the circumstances. There are in the law instances of apparent or ostensible authority which more commonly have the characteristic features of estoppel and the somewhat unique exemplifications of an *597 agency or kindred relationship rather artificially created by implication of law. Barber v. Hochstrasser, 136 N.J.L. 76 (Sup. Ct. 1947); Smedley v. Sweeten, 11 N.J. Super. 39, 41 (App. Div. 1950).
It is also significant that in the present litigation the plaintiff as executor occupies the preexisting position or status of the testatrix and not that of the creditor Theresa. Stryker v. Sands, 4 N.J. 182, 187 (1950). The issue here implicates in essence the liability inter sese between the husband and wife and not the existence of an agency from necessity upon which a creditor sometimes chooses to rely. The executor acquires in such a situation no greater rights than those possessed by the testatrix.
Here the skeleton of the marital relationship at the time of Theresa's engagement was somewhat unique but perhaps not unprecedented. The parties had ceased marital cohabitation for a period of about 30 years. He had discontinued his business in 1944. He was in 1946 over 70 years of age. Indeed, both were on the twilight side of the hill. He explained, "I did not have a nickel." His wife, the testatrix, collected all of the income from her own real estate and from that in which she had an estate by the entirety, and from that source provided for the maintenance of herself and husband. She made no claim upon her husband for support, not even for necessities. It is not made evident whose wrongful conduct occasioned the termination of their marital cohabitation. Certainly it cannot be reasonably and rationally deduced as a fact from those circumstances that in engaging the services of Theresa she anticipated that her impecunious husband would either pay or reimburse her for the cost. Nor would the facts themselves constitute a valid promise by the husband to answer for the debt.
Accordingly, the proposal on behalf of the plaintiff-appellant is that despite those facts other than the fact of marriage this defendant as a matter of law incurred the primary obligation to pay for the nursing services performed for his wife and that in equity he should now exonerate his deceased wife's estate from the payment of the cost thereof. *598 To the contrary, equity never permits a rigid principle of law to smother the factual realities to which it is sought to be applied. In equity you cannot tune out the relevant static and undertones. Equity adapts its relief to the requirements of the particular case, and mainly in this respect the contention of the plaintiff fizzles out.
In the case sub judice equity visualized the facts that for a lengthy period of years the defendant and his wife lived in a state of marital separation. She managed the properties, collected all of the rents and demanded no financial assistance from her husband. The irresistible inference is that this course of conduct was pursued until her death in accordance with either an express or implied mutually accepted understanding. In such circumstances it appears most unlikely that the testatrix, whose interests the plaintiff represents, would have asserted that in hostility to her wishes the defendant failed and neglected to make provision for her support. He was evidently giving to his wife all the income that he had or could earn. Compare, Levin v. Levin, 130 N.J. Eq. 459 (Ch. 1941), affirmed 131 N.J. Eq. 474 (E. & A. 1942). Superadded to all is the positive fact that the testatrix in the transaction with Theresa pledged her own credit and not that of her husband. N.J.S.A. 37:2-16. The proofs do not sustain the contention that the ultimate liability for the payment of the debt should in good conscience be equitably visited upon the defendant.
The judgment is affirmed.