741 A.2d 156 (1999)
326 N.J. Super. 328
Linda M. GRAZIANO, M.D., Plaintiff-Respondent,
v.
Gerald GRANT, M.D., Defendant/Third-Party Plaintiff-Appellant. and
South Jersey Allergy Associates, P.A., Defendant-Respondent,
v.
Marla Tiffany, M.D., Third-Party Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued September 23, 1999.
Decided December 9, 1999.
*158 Steven G. Wolschina, Westmont, for defendant/third-party plaintiff-appellant (Brown & Connery, attorneys; Mr. Wolschina and Joseph A. Zechman, on the brief).
William J. DeSantis, Cherry Hill, for plaintiff-respondent (Kenney & Kearney, attorneys; Mr. DeSantis and Joseph H. Kenney, on the brief).
Audrey B. Winograd, Marlton, for third-party defendant-respondent (Philip T. Ciprietti, attorney; Mr. Ciprietti, on the brief).
South Jersey Allergy Associates, P.A. did not participate in this appeal.
*159 Before Judges STERN, KESTIN and STEINBERG.
*157 The opinion of the court was delivered by STEINBERG, J.A.D.
Defendant/third-party plaintiff Dr. Gerald Grant appeals from the following orders of the Chancery Division: (1) order of December 15, 1998, granting summary judgment in favor of third-party defendant Dr. Marla Tiffany, dismissing Grant's third-party complaint and all claims associated with it; (2) order of January 4, 1999, requiring Grant and defendant South Jersey Allergy Associates, P.A. (South Jersey or the corporation) to pay Tiffany's attorney's fees in the amount of $7,500 and costs in the amount of $514.60, as well as an order of January 20, 1999, extending the time for payment of those fees, and further directing that the corporation shall not be responsible for payment of costs or counsel fees; (3) order of January 21, 1999, granting summary judgment to plaintiff, Dr. Linda M. Graziano; and (4) order of January 25, 1999, requiring Grant to pay Graziano $25,071.81 for attorney's fees and costs. The order of January 21, 1999, mandated specific performance of an agreement Graziano alleges Grant entered into calling for his retirement and Graziano's succeeding him in the practice. That order also required Grant to turn over his stock certificates in the corporation and any other corporate documents within ten days; permitted Graziano's attorney to return to her $9,000 held in escrow pursuant to a prior order of the court; required Grant to pay Graziano $3,276 for automobile expenses; prohibited Grant from treating his former patients of the corporation anywhere for a period of three years from December 11, 1998; prohibited Grant from practicing medicine for three years from December 11, 1998, within a twenty mile radius of the corporation's office; and dismissed, with prejudice, Grant's cross-claim against the corporation and his counter-claim against Graziano. The trial judge denied Grant's request for a stay pending appeal. We subsequently stayed the orders pending appeal. We now affirm in part; reverse in part, and remand for further proceedings.
The corporation is a medical practice specializing in allergy and asthma treatment. It had been established by Grant and his brother, Dr. Norman Grant, each of whom had twenty-five shares prior to the retirement of Norman Grant. Tiffany had entered into an employment contract with the corporation in 1987. Tiffany's employment contract provided that if the relationship was mutually satisfactory, Grant would sell her nine shares of stock at a purchase price of $5,800 per share. The agreement further provided that the corporation would redeem seven shares of Grant's stock, resulting in Grant and Tiffany each owning nine shares of stock. In September 1992, Tiffany paid Grant $52,200 for the purchase of nine shares of the corporation's stock. Apparently, the corporation never redeemed Grant's seven additional shares.
In 1993, Graziano became a part-time employee of the corporation. Sometime in 1994, Grant and Tiffany agreed that Graziano was doing a good job and would be a good addition to the practice. Accordingly, Grant discussed with the corporation's accountant, Isidore A. Francescone, the preparation of a document that would enable Graziano to become a shareholder in the corporation. According to Tiffany and Graziano, Grant intended to retire. Grant testified at a deposition that he had serious health problems and was concerned that he would not survive three years. According to Grant, the parties contemplated that he would sell his shares of stock, but he contemplated working in some capacity for the corporation. However, that fact was not communicated to Tiffany or Graziano. Francescone prepared a document which began with the phrase "Preliminary proposed conditions".
According to Grant, the document was merely a proposal. On the other hand, *160 Tiffany and Graziano contend that the document (the proposal) was an agreement. One of the "preliminary proposed conditions" contemplated that Grant would stop practicing at South Jersey on October 1, 1994, and would then be paid deferred compensation for three years. However, the proposal also noted that Grant's duties and services for the three-year period "needed to be discussed." The proposal also provided that each share of stock was valued at $8,236. Although the proposal provided that Graziano would acquire nine shares of "corporate stock" for $74,124 and that the corporation would redeem his remaining seven shares for $57,652, the parties appear to agree that in essence Graziano was purchasing the nine shares from Grant. Accordingly, Grant was to receive a total of $131,776, nine-sixteenths to be paid by Graziano for nine of his shares, and the remaining seven-sixteenths of that amount to be paid by the corporation for the redemption of Grant's remaining seven shares.[1] The proposal further provided that "[a]ltogether, [Graziano] must pay $74,124 and [Grant] must receive $131,776". In addition, the proposal provided that "[a] 3 year period beginning October 1, 1994 is established to accomplish above".
The proposal further provided that Grant would receive a "deferred compensation contract for three years" paying him $3,750 per month for the first year, for a total of $45,000; $3,250 per month for the second year, for a total of $39,000; and $2,650 per month for the third year, for a total of $31,800. The deferred compensation package was therefore $115,800. However, the deferred compensation package was not in addition to the $131,776, but appears to be a method of funding the pay-out to Grant since the next paragraph provided that the $115,800 in deferred compensation left [Grant] $15,976 "short of the total $131,776 agreed upon price of his sixteen shares". Moreover, the proposal provided that a value of $1,000 per share would be placed on the stock, presumably for redemption purposes, and further provided that Grant would receive $7,000 from the corporation for the redemption of his seven shares, and $9,000 from Graziano for her purchase of his nine shares. That $16,000, coupled with the deferred compensation of $115,800, would totally compensate him in accordance with the proposal.
The proposal went on to provide that in addition to the $9,000 payment Graziano was required to make for her purchase of the shares, the balance of her obligation of $74,000 would be accomplished through reduced salary for the three years. According to the proposal, at the expiration of the three-year period Tiffany and Graziano would own nine shares of the corporate stock and be equal shareholders.
As previously indicated, the proposal further provided that "[t]he continued duties and services expected of [Grant] for the three year period should be discussed." In addition, it specifically provided that "[t]he timing of the actual redemption of the $7,000 by the corporation and the $9,000 payment by [Graziano] to [Grant] must also be discussed." Although the basic intendment of the parties was clearly expressed in the "proposal", some issues were left unresolved.
Since the proposal appears to contemplate that Graziano's salary for three years would have been reduced by a total of $65,000, which would have been her contribution towards the corporation's deferred compensation package to Grant, the parties appear to have permitted Grant to receive $2,000 per month, and Graziano's pay check was correspondingly reduced. At his deposition, Grant testified that this was done in order for Graziano to satisfy her obligation with "before-tax dollars".
*161 Grant did not retire in October 1994. Apparently his health had improved. He contended that he worked two days per week, and Tiffany and Graziano worked three days per week. We cannot determine from the record if there is a factual dispute regarding that contention. In addition, the parties appear to agree that Grant continued to be the administrator of the practice. In addition to his salary, Grant continued to pay sums of money to himself as bonuses.
The parties appear to agree that in early 1997, the relationship between Tiffany and Graziano, on the one hand, and Grant, on the other, became strained. Tiffany and Graziano took the position that Grant should completely stop practicing with them effective October 1, 1997. In April 1997, a meeting took place at Francescone's office in an effort to resolve the lack of harmony. The meeting was attended by Tiffany, Graziano, Grant, Francescone and Graziano's husband, a practicing New Jersey attorney. The differences were not resolved and, on September 26, 1997, Graziano filed suit seeking specific performance of what she contended was the agreement, together with damages, both compensatory and punitive. Simultaneously, the judge signed an order to show cause which prohibited Grant from: (1) entering the offices of the corporation after September 30, 1997, and (2) contacting or attempting to contact, directly or indirectly, patients of the corporation; and requiring Grant to return lists of patients of the corporation which were in his possession. Grant filed an answer, counter-claim and cross-claim. He also filed a third-party complaint against Tiffany. Tiffany filed an answer and cross-claim against Grant and the corporation. Ultimately, the orders were entered that resulted in this appeal.
An appellate court applies the same standard that governs trial courts in determining whether summary judgment was properly granted. Prudential Property & Casualty Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div.1998). We must determine whether the competent evidential materials presented to the motion judge, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational fact-finder to resolve the alleged disputed issue in favor of the non-moving party. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). The motion judge may not weigh the evidence and determine the truth of the matter. Ibid. It is the role of the judge to determine whether there is a genuine issue for trial. Ibid. The moving party must show that there is no genuine issue as to any material fact challenged and that he or she is entitled to a judgment or order as a matter of law. R. 4:46-2(c).
In that context, we first consider Grant's contention that the proposal is not sufficiently definite and certain as to have been the basis of the order for summary judgment requiring specific performance. To be sure, the terms of a contract must be definite and certain so that a court may order with precision what the parties must do. Barry M. Dechtman, Inc. v. Sidpaul Corp., 89 N.J. 547, 552, 446 A.2d 518 (1982). However, the fact that when read literally, an agreement may seem indefinite does not necessarily require a conclusion that it may not be specifically enforced. Ibid. The judge must also examine the situation of the parties and the surrounding circumstances to determine the meaning of the agreement and whether it is capable of specific performance. Ibid. Reasonable certainty of the terms is all that is required. Ibid.
We reject Grant's contention that no enforceable contract exists because the negotiations were preliminary in nature and the terms contained in the proposal are inconsistent with each other and with the parties' performance. We agree that the proposal could have been clearer. Indeed, Francescone's label "Preliminary proposed conditions" necessarily implies that the writing does not constitute the *162 final agreement of the parties, but is merely a proposal. Moreover, the proposal identifies a number of issues that required further discussion, including the continued duties and services expected of Grant, as well as the timing of the redemption. Nevertheless, we conclude that the record supports the judge's conclusion that the parties chose to perform the essential terms of the proposal thereby constituting it an agreement that Grant would sell his interest in the corporation to Graziano and retire on October 1, 1997. If an agreement is reached through an offer and acceptance, and is sufficiently definite so that the performance to be rendered by each party can be ascertained with reasonable certainty, a contract arises. Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435, 608 A.2d 280 (1992). If the parties agree on essential terms and further manifest an intention to be bound by those terms, they have created an enforceable contract. Ibid. On the other hand, if the parties do not agree to one or more essential terms, the agreement is unenforceable. Ibid. Stated another way, there must be an unqualified acceptance of the offer in order for there to be a contract. Id. at 435-36, 608 A.2d 280.
Acceptance may come either from words, creating an express contract, or from conduct, creating a contract implied-in-fact. Id. at 436, 608 A.2d 280. Silence alone does not ordinarily manifest acceptance. "Silence does not ordinarily manifest assent, but the relationships between the parties or other circumstances may justify the offerors expecting a reply and, therefore, assuming that silence indicates asset to the proposal." Ibid. Moreover, "when an offeree accepts the offeror's services without expressing any objection to the offer's essential terms, the offeree has manifested assent to those terms." Ibid.
While the agreement of these parties may not have been drafted with precision, it clearly contemplates Grant's retirement. For example, at the expiration of the three-year period, all corporate stock would be owned by the corporation, Tiffany or Graziano. None would be owed by Grant. Although the manner of payment by Graziano to Grant set forth in the agreement was not complied with, Grant does not deny that he was paid $72,000 by Graziano in the form of reduced compensation for a three-year period. In addition, Graziano alleged in the complaint that Grant indicated he wanted to retire and offered to sell his share of the practice to her. Grant admitted that allegation in his answer. The judge did not err in concluding as a matter of law that Grant offered to retire and sell his interest in the corporation to Graziano. Moreover, Graziano's performance in paying Grant for his shares constitutes an acceptance of the offer. Grant's acceptance of the $72,000 from Graziano precludes him from arguing that the agreement is unenforceable because the parties did not "follow the terms set out in the Preliminary proposed conditions memo". It would have been unjust and inequitable for the judge, sitting in a court of equity, to conclude, in the face of all the circumstances, that the acceptance of a method of payment other than specified in the proposal precluded the formation of a contract for the sale and purchase of Grant's shares. Graziano paid for those shares and Grant accepted those payments.
We next consider Grant's contention that the Statute of Frauds, N.J.S.A. 25:1-5, renders the oral agreement unenforceable since it could not be performed in one year. We reject that contention. Initially, N.J.S.A. 25:1-5(e), which is the section of the Statute of Frauds Grant relied upon, was repealed in 1995, after the agreement was prepared, but prior to the hearing on the motion. We need not decide whether the repeal after the agreement was reached renders the Statute inapplicable, since it is well settled that an oral contract or agreement which might otherwise be barred by the Statute of Frauds is enforceable where *163 there has been performance by one party and to do otherwise would work an inequity on the party who has performed. Klockner v. Green, 54 N.J. 230, 236, 254 A.2d 782 (1969). Here, Graziano has performed by paying $72,000 to Grant. It would be unjust and inequitable to permit Grant to retain the funds and not require him to perform his obligations. The Statute of Frauds cannot be invoked to work an injustice. Ibid. Grant's conduct in accepting the benefits of the agreement precludes him from denying the existence of an agreement merely because it is oral. The Statute of Frauds is designed to prevent fraud and, therefore, a court of equity may not permit it to be used to accomplish a fraud. Ibid.; Lahue v. Pio Costa, 263 N.J.Super. 575, 599, 623 A.2d 775 (App. Div.), certif. denied, 134 N.J. 477, 634 A.2d 524 (1993).
Moreover, the motion judge did not err in restraining Grant from remaining in the practice. While Grant contends that he anticipated being able to remain as an employee, there is nothing in the record to indicate he communicated that expectation to Tiffany and Graziano. Moreover, Grant's expectation that he would be permitted to remain as an employee is unreasonable in light of the fact that the agreement clearly contemplated that he would no longer be a stockholder after October 1, 1997. At that time, Tiffany and Graziano had the right to deny Grant continued employment.
We next consider Grant's contention that the trial judge erred in enjoining him from treating former patients of the practice for a period of three years, and further enjoining him from practicing medicine for a period of three years within twenty miles of the practice's office. Grant contends that the judge could not place restrictions upon his right to practice medicine because the agreement did not expressly provide for a covenant against competition.
We recognize that it is not the function of the court to make a better contract for the parties, or to supply terms that have not been agreed upon. Schenck v. HJI Associates, 295 N.J.Super. 445, 450, 685 A.2d 481 (App.Div.), certif. denied, 149 N.J. 35, 692 A.2d 48 (1997). If the terms of a contract are clear, we must enforce the contract as written and not make a better contract for either party. Ibid. However, a contract must be interpreted considering the surrounding circumstances and the relationships of the parties at the time it was entered into, in order to understand their intent and to give effect to the nature of the agreement as expressed by them. Id. at 450-51, 685 A.2d 481. In addition, a court of equity should not permit a rigid principle of law to smother the factual realities to which it is sought to be applied. Grieco v. Grieco, 38 N.J.Super. 593, 598, 120 A.2d 260 (App.Div.1956). Equity will not permit a wrong to be suffered without affording the appropriate remedy. Roberts v. Roberts, 106 N.J.Super. 108, 109, 254 A.2d 323 (Ch.Div.1969); Orland Properties, Inc. v. Broderick, 94 N.J.Super. 307, 313-14, 228 A.2d 95 (Ch. 1967). Finally, equity regards as done that which ought to be done. Wohlegmuth v. 560 Ocean Club, 302 N.J.Super. 306, 312, 695 A.2d 345 (App.Div.1997).
Applying principles of fairness and justice, a judge sitting in a court of equity has a broad range of discretion to fashion the appropriate remedy in order to vindicate a wrong consistent with principles of fairness, justice, and the law. The judge correctly concluded that since the agreement contemplated Grant's retirement, the parties did not formally agree to a restrictive covenant. Moreover, the judge correctly concluded that the essence of the shares of stock in a medical practice is the patient base. The judge also correctly concluded that he lacked the authority to require Grant to retire against his will. We agree with the judge's ultimate conclusion that it would be unfair and inequitable to permit Grant to retain the benefits *164 of the bargain without being subject to some reasonable limitation upon his right to retract his agreement to retire and compete with Tiffany and Graziano. The imposition, under these circumstances, of a reasonable covenant against competition is consistent with the broad equitable powers entrusted to him. We therefore conclude that the judge did not mistakenly exercise his discretion in deciding to impose a restrictive covenant against Grant.
Although we have concluded that the judge had the inherent equitable power to impose a restrictive covenant upon Grant, we are concerned with the breadth of the covenant he actually imposed. In order to be enforceable, a restrictive covenant must be reasonable under all the circumstances in the case. Karlin v. Weinberg, 77 N.J. 408, 417, 390 A.2d 1161 (1978); Solari Industries, Inc. v. Malady, 55 N.J. 571, 585, 264 A.2d 53 (1970). The validity and enforceability of a covenant against competition is fact-sensitive and must be determined in light of the facts of the case. Platinum Management v. Dahms, 285 N.J.Super. 274, 294, 666 A.2d 1028 (Law Div.1995).
Resolution of the scope of the covenant against competition requires a delicate, fact-sensitive balancing of the interests of the purchasers, Tiffany and Graziano; the right of the seller, Grant, to pursue his profession; the interests of the public in general; and those of the patients in particular. Ordinarily, and certainly here, these issues can only be resolved after an evidentiary hearing rather than disposition by way of summary judgment. Apparently, relying to some extent upon the covenant Grant entered into with his brother when his brother retired from the practice some years earlier, the judge enjoined Grant from treating any patients he formerly treated with the practice for a period of three years, and further enjoined Grant from practicing medicine for a period of three years within twenty miles of the practice's office. He made no findings of fact or conclusions of law as required by R. 1:7-4 to support those determinations, thereby hindering our ability to determine whether he properly exercised the broad discretion given him. See Curtis v. Finneran, 83 N.J. 563, 569-70, 417 A.2d 15 (1980). Accordingly, we are constrained to reverse that portion of the judgment setting forth the period of time the restraint should cover and the territorial limitations.
We are particularly concerned with the twenty-mile limitation, in addition to the prohibition from treating former patients for the three-year period. A restrictive covenant ancillary to an employment contract between physicians is enforceable to the extent that it protects a legitimate interest of the employer, imposes no undue hardship on the employee, and is not injurious to the public. Karlin v. Weinberg, supra, 77 N.J. at 411-12, 390 A.2d 1161. A physician has a legitimate interest in the protection of patient relationships. We perceive no difference between a covenant ancillary to an employment agreement and a covenant ancillary to the sale of a medical practice. Indeed, a covenant against competition ancillary to the sale of a practice may be entitled to broader protection than one that is ancillary to an employment agreement. See id. at 417, 390 A.2d 1161. We conclude that a physician who purchases a practice from a retiring physician has the right to expect that the seller will indeed retire, and if the selling physician changes his mind, the purchasing physician has a legitimate interest in protecting the patient list he or she has acquired. That protection, however, must be reasonable, taking into account the selling physician's right to change his mind and to continue to practice, and considerations of patients' interests, as well as those of the public generally. Therefore, the express or implied covenant against competition must be sufficiently broad to protect the purchasing physician's interest, yet sufficiently limited to protect the withdrawing physician's right to practice medicine, to also protect the interests of *165 the public, as well as the interests of the individual patients.
While we recognize that in Karlin, supra, the covenant did not prevent the employee from seeing former patients, we conclude that it is entirely appropriate for the judge, consistent with the broad equitable powers afforded him, to distinguish a post-employment covenant from a covenant ancillary to the sale of a practice. If that were not the case, a physician could sell his practice, renege on a promise to retire, retain the benefits of the bargain, and yet open an office nearby the next day and continue to treat his former patients. Equity cannot permit such an unjust result.
Accordingly, upon remand, the judge must consider all relevant factors and fashion a remedy which protects the legitimate interests of Tiffany and Graziano, yet imposes no undue hardship upon Grant, and also considers the interest of the public, and the patients. Karlin v. Weinberg, supra, 77 N.J. at 422, 390 A.2d 1161. The judge should consider the legitimate interests of Tiffany and Graziano in protecting their relationship with the patients of the practice considering the fact that they purchased the right to seek to continue treating those patients. Id. at 423, 390 A.2d 1161. The covenant shall not be for a period of time beyond that which Tiffany and Graziano need to protect the patient base. Ibid. Moreover, the covenant should not extend beyond the territorial area needed to protect the interests of Tiffany and Graziano, taking into account the fact that the covenant ultimately imposed may enjoin Grant from treating former patients of the practice. Ibid. Great care must be taken to assure the fact that the legitimate interests of Tiffany and Graziano are protected while, at the same time, Grant is not restricted from engaging in activities which are not, in fact, unfairly competitive with them. Ibid. The judge must also consider any undue hardship that may be imposed upon Grant, and the interests of the public, and the patients. Of particular significance may be the territorial limitations of the covenant. In addition, the judge should consider whether Grant should be totally restricted from treating former patients, or merely restricted from soliciting them. For example, if a territorial limitation is to be imposed, the judge should consider whether the preferences of patients who wish to be treated by Grant and are willing to travel a distance for that purpose, should not be frustrated.
We next consider Grant's contention that the trial judge erred in requiring him to turn over all of his shares in the corporation while dismissing his claims for additional compensation.[2] He contends that it was inconsistent for the judge to find an enforceable agreement, require him to turn over his shares pursuant to that agreement, yet deny his claim for the additional compensation due him under the agreement. On the other hand, Tiffany and Graziano claim that the document contemplated that the corporation would redeem Grant's stock prior to October 1, 1997. They argue that any other conclusion would require them to pay the balance of the pay-out since they would then be controlling the corporation. In fact, Tiffany argues that her agreement with Grant required the corporation to redeem the same shares in 1987. Tiffany and Graziano contended, and the motion judge agreed, that Grant was required to have the corporation redeem the shares before he drew bonuses.
We conclude that the record does not support the grant of summary judgment on this issue since there are genuine issues *166 of material fact that require resolution, thus precluding a grant of summary judgment. See R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., supra, 142 N.J. at 540, 666 A.2d 146. Initially, we point out that the proposal does not clearly indicate that the shares must be redeemed prior to the taking of bonuses. Indeed, the proposal by its very terms provides that "[t]he timing of the actual redemption of the $7,000 by the corporation and the $9,000 payment by [Graziano] to [Grant] must also be discussed." That language demonstrates the existence of a genuine factual issue regarding the timing of the redemption, i.e., what was contemplated or is fair. There are other potential factual issues that require resolution. For example, were Tiffany and Graziano aware of the fact that Grant was taking bonuses? Did Tiffany receive any bonuses during the same time period? Did Tiffany and Graziano acquiesce in Grant's remaining in the practice? If they did, for how long a period of time did they acquiesce? An important factor to consider may be the amount of income Grant generated in proportion to the income generated by Tiffany and Graziano while Grant remained in the practice.
Tiffany and Graziano also argue that Grant is precluded from seeking to have the corporation redeem the seven shares since they should have been redeemed in conjunction with Tiffany's stock purchase years earlier. While that argument has some initial attraction, the fact remains that under Grant's agreement with Tiffany, the corporation was required to redeem the shares. If the corporation did not, it may be that Graziano did not get the benefit of the bargain. If that is correct, and the corporation had never redeemed the shares, Grant may have had the right to include in the agreement with Graziano and the corporation, an obligation that the corporation now redeem the shares in conjunction with the sale to Graziano. These are illustrations of material facts that are genuine, and not insubstantial, which preclude the grant of summary judgment on the question of Grant's entitlement to the balance of funds he alleges are still due him under the agreement. A remand is necessary for an evidentiary hearing to resolve these issues, as well as any other factual issues developed by the parties before a determination can be made regarding Grant's entitlement to additional funds.
We next consider the award of counsel fees to Tiffany and Graziano under N.J.S.A. 2A:15-59.1, which is sometimes referred to as the Frivolous Litigation Act (the Act). Under the Act, the judge may award the prevailing party reasonable litigation costs and reasonable attorney fees if the judge concludes that a complaint, counterclaim, cross-claim or defense asserted by the non-prevailing party was frivolous. N.J.S.A. 2A:15-59.1(a)(1). In order to find that a complaint, counterclaim, cross-claim or defense of the non-prevailing party was frivolous, the judge must conclude either that it was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury, N.J.S.A. 2A:15-59.1(b)(1), or that the non-prevailing party knew, or should have known, that it was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law, N.J.S.A. 2A:15-59.1(b)(2).
This record does not support a conclusion that Grant acted in bad faith, solely for the purpose of harassment, delay or malicious injury, or that his position was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law. In considering an application for fees and costs under the Act, we must be mindful of the fact that "the right of access to the court should not be unduly infringed upon, honest and creative advocacy should not be discouraged, and the salutary policy of litigant's bearing, in the main, their own litigation *167 costs, should not be abandoned". Iannone v. McHale, 245 N.J.Super. 17, 28, 583 A.2d 770 (App.Div.1990). "[I]n a democratic society, citizens should have ready access to all branches of government, including the judiciary." McKeownBrand v. Trump Castle Hotel & Casino, 132 N.J. 546, 561-62, 626 A.2d 425 (1993). Here, Graziano's complaint sought specific performance of the alleged oral agreement and further sought to restrain Grant from entering the corporate premises. It must be borne in mind that this had been Grant's office for a number of years and that he was one of the founders of the corporation. In addition, the complaint sought to restrain him from contacting patients of the practice. Furthermore, the complaint sought to impose upon Grant a restrictive covenant for a period of five years and twenty-five miles notwithstanding the fact that the parties had never discussed a restrictive covenant. Moreover, the complaint sought compensatory and punitive damages against Grant.
Certainly, Grant had the right to defend the action and this record does not support a conclusion that he acted in bad faith, solely for the purpose of harassment or delay, or that his defense was without any reasonable basis in law. After all, the nature of the action justified his defending it. Although we have concluded, contrary to Grant's contention, that a contract did exist, we cannot conclude that his denial of the existence of a contract is cause to award litigation costs against him. In addition, although we agree that the judge properly exercised his discretion in limiting Grant's practice of medicine, the oral agreement did not contain a covenant. Certainly, Grant had the right to resist that application. Moreover, we have remanded for reconsideration the breadth of the covenant imposed. Furthermore, in light of our conclusion that the grant of summary judgment regarding the balance Grant contends is due him under the agreement was issued prematurely, any award of litigation costs based upon Grant's asserting that position was improper. For all these reasons, we vacate the award of litigation costs in favor of Tiffany and Graziano.
Finally, we consider Grant's request that if we remand we direct that the case be assigned to a different judge since the motion judge inferred that Grant engaged in "chicanery, artifice, sharkness" and "shady conduct". Grant also bases his request upon the fact that the judge made a finding that he was pursuing frivolous litigation. We recognize that we have the authority to direct that a case be assigned to a new judge upon remand. New Jersey Div. of Youth and Family Services v. A.W, 103 N.J. 591, 617, 512 A.2d 438 (1986). That power may be exercised when there is a concern that the trial judge has a potential commitment to his or her prior findings. Ibid. In Carmichael v. Bryan, 310 N.J.Super. 34, 49, 707 A.2d 1357 (App. Div.1998), we directed that on remand a case be assigned to another judge where the motion judge had expressed opinions regarding the intent of one of the parties. In J.L. v. J.F., 317 N.J.Super. 418, 438, 722 A.2d 558 (App.Div.), certif. denied, 158 N.J. 685, 731 A.2d 45 (1999), we directed that a remand hearing be conducted by a different judge since the motion judge had made determinations regarding credibility.
Although we have the authority to direct the assignment of the case to a different judge, we believe that authority should be sparingly exercised. This case does not clearly call for the assignment of the matter to another judge. In addition, consideration must be given to the fact that, to some extent, it would be counterproductive to require a new judge to acquaint himself or herself with the litigation. Rather, we believe that an application for disqualification pursuant to R. 1:12-1 should initially be made to the motion judge himself. Bonnet v. Stewart, 155 N.J.Super. 326, 330, 382 A.2d 930 (App.Div.), certif. denied, 77 N.J. 468, 391 A.2d 483 (1978). If the judge believes that he is committed to the findings he *168 has previously made, or there is any other reason which might preclude a fair and unbiased hearing and judgment or which might reasonably lead counsel or the parties to believe so, R. 1:12-1(f), we have every confidence that the judge will recuse himself.
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.[3]
NOTES
[1] These are the same seven shares that the corporation was supposed to redeem pursuant to Grant's agreement with Tiffany.
[2] We note that the order requires Grant to turn over his shares in the corporation to Graziano, and further requires that he turn over his stock certificates for the corporation, and other corporate documents to Graziano. That may be an error. Graziano is only entitled to nine shares. Any other shares held by Grant were to have been redeemed by the corporation and do not belong to Graziano. If our impression is correct, this should be addressed on remand.
[3] We previously reserved decision on Grant's motion to strike portions of the brief and appendix filed by Tiffany and Graziano, and to grant leave to file an over-length reply brief. We also reserved decision on Graziano's motion to supplement the record. We grant Grant's motion to file an over-length reply brief and deny Graziano's motion to supplement the record. We also grant Grant's motion striking from the brief and appendix those matters that were not part of the record before the trial judge. R. 2:5-4(a); Venner v. Allstate, 306 N.J.Super. 106, 111, 703 A.2d 330 (App.Div.1997)(the record before an appellate court should consist only of filings in the trial court; matters not part of the record in the trial court cannot be considered on appeal).