**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1248-23

JORGE REMACHE-ROBALINO,

    Plaintiff-Appellant,

v.

NADER BOULOS, M.D., LANI
MENDELSON, M.D., and ST.
JOSEPH'S REGIONAL MEDICAL
CENTER,

    Defendants-Respondents.

_____

Argued September 12, 2024 – Decided September 23, 2024

Before Judges Sabatino, Gummer and Jacobs.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1929-19.

Christina Vassiliou Harvey argued the cause for appellant (Lomurro Munson, LLC, attorneys; Jonathan H. Lomurro, of counsel; Christina Vassiliou Harvey, of counsel and on the briefs).

Charles E. Murray, III, argued the cause for respondents (Farkas & Donohue, LLC, attorneys; Charles E. Murray, III, of counsel and on the brief).

PER CURIAM

This matter concerning the conditions of a defense neuropsychological examination ("DME") returns to this court a second time, following the Supreme Court's remand to the trial court "for further proceedings consistent with [the Court's] opinion" in DiFiore v. Pezic, 254 N.J. 212 (2023) (affirming and modifying in part this court's opinion in DiFiore v. Pezic, 472 N.J. Super. 100 (App. Div. 2022)).[1]  The dispute in this case centers on whether defendants met their burden—as allocated in the Supreme Court's consolidated opinion—to bar plaintiff from using an audio recording device to record the examination.

On remand, the trial court granted defendants' request, without expressly addressing many of the offsetting considerations set forth in the appellate opinions in DiFiore and language in those opinions specifically discussing this case.  We vacate the trial court's order and remand this case once again.

---

[1] For ease of reference, we cite this court's published opinion as "DiFiore I," and the Supreme Court's opinion as "DiFiore II."  Both opinions consolidated the present case with two other appeals involving different plaintiffs but overlapping legal issues.

2

The underlying facts and procedural history of this case are described in

DiFiore I as follows:

> Jorge Remache-Robalino, a native Spanish speaker in his mid-fifties, was injured when a metal fragment penetrated his right eye at work. He sought treatment with defendants—two treating doctors and their employer, St. Joseph's Medical Center—who failed to discover the fragment. Allegedly due to this failure, Remache-Robalino went blind in his right eye. He alleges that his condition resulted in depression, anxiety, and impaired concentration.

> Remache-Robalino filed a medical malpractice complaint against defendants. Like DiFiore, Remache-Robalino claimed that defendants' conduct caused him to sustain, among other harms, permanent psychological injuries.

> In August 2021, defendants sent Remache-Robalino a notice to attend a neuropsychological DME. Remache-Robalino agreed to attend the exam, on the condition that he be allowed to make an audio recording of the session, as authorized by [B.D. v.] Carley, [307 N.J. Super. 259 (App. Div. 1998)]. Among other things, plaintiff was concerned about his language barrier, as his bilingual attorney had spotted mistakes by the interpreter at plaintiff's deposition.

> Defendants moved to compel the examination without any monitoring or recording. Their motion included a certification by their chosen neuropsychologist, Dr. Joel Morgan, who stated that he would not perform the examination if it had to be recorded. According to Dr. Morgan, "the experience of being observed and/or recorded can artificially alter an

3

individual's task performance and affect the reliability and validity of test scores."

The trial judge granted defendants' motion to compel an unrecorded neuropsychological DME over Remache-Robalino's objections. The judge was especially persuaded by defendants' argument that allowing Remache-Robalino to record a DME conducted by an expert of defendants' choosing would cause an evidentiary asymmetry. Defendants asserted, as was then echoed by the trial court, that Remache-Robalino had already undergone examinations by other experts without giving the defense notice of those exams or allowing them to have a representative attend or have the exams recorded.

Remache-Robalino moved for reconsideration, arguing he has an entitlement under Carley to use an unobtrusive audio recording device at the DME. This time, the judge granted Remache-Robalino's request, finding that the earlier examinations "were not generated by DMEs[,]" and therefore not undertaken for discovery purposes. The trial court's ensuing order urged the parties to "enter into a confidentiality order to protect the DME physician's concerns" with regard to the presence of an audio recording device.

Defendants moved for reconsideration of the order permitting Remache-Robalino to use an audio recording device at the DME. They emphasized the reservations voiced by Dr. Morgan, who certified it was against his professional custom to record such examinations, and that the presence of the recording device can taint the results.

In a third ruling, the motion judge then granted defendants' motion for reconsideration, thereby retracting Remache-Robalino's permission to bring an

4

audio recording device into the DME. On reflection, the judge concluded that <u>Carley</u> does not entitle Remache-Robalino to an audio recording. The judge reasoned it would be unfair if defendants were deprived their choice of neuropsychologist merely because the doctor was "following his [professional] association's recommendations not to audio tape because of the potential[ ] of invalidating the integrity of the process[.]"

Plaintiff had expressed to the judge concerns that defendants will select experts who similarly refuse to perform recorded DMEs in future cases. Responding to those concerns, the judge assured that "the judiciary will address" any problematic pattern of defendants strategically choosing neuropsychological examiners whose professional customs are opposed to audio recordings.

Lastly, the judge found that the presence of an interpreter chosen by the defendants does not constitute a waiver of defendants' arguments against the presence of additional third parties or recording devices, and is not inconsistent with those positions.

Having lost the third motion round, Remache-Robalino moved once again for reconsideration. This time, he presented an opposing certification by another clinical neuropsychologist, George Carnevale, Ph.D., who offered a more flexible perspective about the professional concerns involved in recording such DMEs. Dr. Carnevale asserted that an audio recording would not necessarily taint the results of a neuropsychological exam. He also stated that a protective order would effectively allay any concerns with the copying of test material or intellectual property.

5

In a concise order, the judge summarily denied Remache-Robalino's final motion as "merely express[ing] disagreement with the Court's decision." This emergent interlocutory appeal by Remache-Robalino ensued. We granted leave to appeal and combined this case with the other two cases.

[DiFiore I, 472 N.J. Super. at 67–69.]

In DiFiore II, the Supreme Court's opinion encapsulated the background

of this case as follows:

In December 2017, Jorge Remache-Robalino, a native Spanish speaker in his mid-fifties, was injured in a work-related accident that damaged his right eye, ultimately leading to blindness in that eye. A psychiatrist later diagnosed him with major depressive disorder and post-traumatic stress disorder, and noted that his concentration and short-term memory were "mildly impaired." After defendants—two doctors who treated plaintiff's injuries and their employer, St. Joseph's Regional Medical Center—noticed a neuropsychological DME, Remache-Robalino sent a letter informing defendants that, consistent with [Carley], he would audio record the DME. He asserted that his concentration and memory issues, along with his lack of fluency in English, would leave him unable to address any inconsistencies between the exam and the defense expert's report and testimony. Remache-Robalino specifically noted that "his bilingual attorney had spotted mistakes by the interpreter at [his] deposition," DiFiore, 472 N.J. Super. at 116, and evidence of an inaccurate translation during the DME would be lost without a recording or a third party present.

Defendants opposed an audio recording, certifying that their chosen neuropsychologist, Dr. Joel Morgan, would not perform the examination if it were recorded. In support of his position, Dr. Morgan cited the 2016 Policy Statement of the American Board of Professional Neuropsychology Regarding Third Party Observation and the Recording of Psychological Test Administration in Neuropsychological Evaluations (ABN Policy Statement). See Alan Lewandowski et al., ABN Policy Statement, 23 Applied Neuropsych. 391 (2016).

The trial court eventually ordered Remache-Robalino to submit to an unrecorded and unaccompanied DME. "[T]he judge found that the presence of an interpreter chosen by the defendants [did] not constitute a waiver of defendants' arguments against the presence of additional third parties or recording devices." DiFiore, 472 N.J. Super. at 117.

[DiFiore II, 254 N.J. at 222–23.]

Turning to the applicable legal standards, our opinion in DiFiore I recognized the competing interests of plaintiffs weighed against defendants and defense experts in either recording or having a third-party observer attend a DME, particularly where a plaintiff is alleged to have cognitive limitations or language barriers (both of which exist here) that can make it difficult for that plaintiff to rebut or correct the examiner's version of what occurred during the examination. DiFiore I, 472 N.J. Super. at 71–75. That discussion included a policy statement from the American Board of Professional Neuropsychology

7

disfavoring third-party observation or recording of such examinations, but also recognizing the authority of a court to require such conditions over the examiner's objection after reasonable alternatives have been exhausted. Id. at 72–74.

After assessing the competing interests, we adopted the following multi-factor approach to such disputes, going forward:

> First, a disagreement over whether to permit third-party observation or recording of a DME shall be evaluated by trial judges on a case-by-case basis, with no absolute prohibitions or entitlements.
>
> Second, despite contrary language in Carley, it shall be the plaintiff's burden henceforth to justify to the court that third-party presence or recording, or both, is appropriate in a particular case.
>
> Third, given advances in technology since 1998, the range of options should include video recording, using a fixed camera that captures the actions and words of both the examiner and the plaintiff.
>
> Fourth, to the extent that examiners hired by the defense are concerned that a third-party observer or a recording might reveal alleged proprietary information about the content and sequence of the exam, the parties shall cooperate to enter into a protective order, so that such information is solely used for the purposes of the case and not otherwise divulged.
>
> Fifth, if the court permits a third party to attend the DME, it shall impose reasonable conditions to

8

prevent the observer from interacting with the plaintiff or otherwise interfering with the exam.

Sixth, if a foreign or sign language interpreter is needed for the exam (as is the case in two of the appeals before us) the examiner shall utilize a neutral interpreter agreed upon by the parties or, if such agreement is not attained, an interpreter selected by the court.

[Id. at 106–107.]

The Supreme Court's opinion adopted this court's holdings except for one of the factors (prong 2) concerning the allocation of the burden of proof:

We therefore affirm five prongs of the Appellate Division's six-prong holding. On prong one, we agree that trial judges must decide whether to permit third-party attendance and/or recording of a DME on a case-by-case basis, without "absolute prohibitions or entitlements." Id. at 129.

On prong three, we concur that trial courts should consider both audio and video recording, as the value of both in resolving a dispute as to what occurred during a DME "could be significant." Id. at 130. We likewise concur that smart phones can unobtrusively be used to record a DME with "minimal effort." Ibid. Especially in the age of virtual meetings, both audio and video recording seem easy to accomplish and not unduly disruptive.

As to prong four, we agree with the prescription that "the parties shall cooperate to enter into a protective order" when a defense medical examiner is concerned that third-party observation, or an audio or video recording, could lead to the dissemination of

9

proprietary information about the exam. Id. at 131. We likewise agree with the Appellate Division that a protective order is appropriate to ensure that information about a DME "is solely used for the purposes of the case and not otherwise divulged." Ibid.

With regard to prongs five and six, we concur that reasonable conditions should be imposed on third-party observers to ensure they do not interfere with exams and that, where needed, a neutral foreign- or sign-language interpreter shall be agreed on by the parties or, failing agreement, selected by the court.

[DiFiore II¸ 254 N.J. at 232–33 (emphasis added).]

Regarding the burden of proof, the Court departed from this court's holding and placed the burden instead on defendants "to show why a neutral third-party observer or an unobtrusive recording should not be permitted in a particular case best comports with the realities of DMEs and the text of Rules 4:19 and 4:10-3." Id. at 233. "It also ensures fairness in our civil justice system." Ibid. Among other things, the Court recognized that "especially for plaintiffs with alleged cognitive limitations, psychological impairments, or language barriers, a DME reflects a profound power imbalance between the plaintiff and a medical professional with long experience in the examination of patients and participation in court proceedings." Id. at 234. That power imbalance, and the experience in many other states allowing DME recordings

and observers, id. at 237–38, led the Court to mandate the following, which included a specific query about Remache-Robalino's case:

> We therefore hold that if a plaintiff seeks to bring a neutral third-party observer to a Rule 4:19 exam, or to audio or video record the exam, plaintiff's counsel should notify defendant. If defense counsel opposes the third-party observation or recording, the parties should meet and confer in an effort to reach agreement. Failing an agreement, defendant can move for a protective order under Rule 4:10-3 to bar the observation or recording.
>
> The trial court must then decide what to permit or forbid with no absolute prohibitions or entitlements. In undertaking a case-by-case analysis, trial courts must balance both the need for an accurate record and the imbalance of power between a medical professional and a patient against any valid concerns regarding the expert's ability to conduct an accurate assessment of the patient's condition with a recording or a neutral third-party observer. The plaintiff's age, ability to communicate, cognitive limitations, psychological impairments, inexperience with the legal system, and language barriers are all relevant to this determination; other factors may be as well.
>
> The degree of possible negative impact on an examination must also be assessed. It is difficult to imagine, for example, how a third party who silently observes a dental examination could negatively impact the exam. As discussed below, a neuropsychological examination may raise different concerns. Whether the examination will already be attended by anyone other than the doctor and plaintiff is also relevant. For example, for a person with limited English proficiency who will already be accompanied by an interpreter,

11

> despite the trial court's holding regarding Remache-Robalino, it is not immediately obvious how an unobtrusive recording device would call the validity of the examination into question in a way that the interpreter would not.
>
> Pertinent too is the type of observer. A licensed nurse silently taking notes is different in kind from an attorney interjecting on behalf of their client. We agree with the <u>Stoughton</u> court that "[t]here is no need to turn the examining room into a court room." 281 N.J. Super. at 611. We therefore emphasize that our holding applies only to neutral third-party observers, not attorneys. Similarly, our holding is limited to third-party observers, not third parties who seek to interfere with or disrupt the exam. A person who sits silently and unobtrusively takes notes is a far cry from a third party who seeks to control, or participate in, the exam herself.
>
> [<u>Id.</u> at 238–39 (emphasis added) (footnote omitted).]

As of September 2024, the Supreme Court has revised <u>Rule</u> 4:19, as recommended by the Civil Practice Committee, to codify in part these holdings. <u>See</u> <u>R.</u> 4:19-2 (eff. Sept. 1, 2024). The Court declined to adopt a "reciprocal" rule authorizing the recording of examinations of plaintiffs by their own medical experts.

On remand, the trial court considered written submissions of the parties and chose, as is its prerogative, not to hold oral argument. The court then issued a short written order on December 1, 2023 that reiterated its November 19, 2021

12

order disallowing the use of the recording device. The order stated that the court's "prior order found that good cause existed to prohibit the use of recording devices and observers, as it would deprive the Defendants' right to utilize the Expert of their choosing."

As highlighted by appellant's counsel, the trial court's remand order is problematic in several respects. It does not discuss any of the six factors delineated in DiFiore I and DiFiore II. It incorrectly treats as an unqualified "right" the ability of defendants to use an expert of their own choosing, contrary to the holdings of DiFiore I and DiFiore II. The order does not acknowledge the Supreme Court's shifting of the burden to defendants to justify a protective order. The order does not address expressly the offsetting considerations that must be balanced against defendants' interests. The order does not address the Supreme Court's observation that "it is not immediately obvious how an unobtrusive recording device would call the validity of the examination into question in a way that the interpreter would not." Id. at 239.

The matter must be remanded again to address these omissions from the analysis. We decline plaintiff's request that we exercise original jurisdiction and decide the motion ourselves. Given that the motion judge has considered this matter in five sequential orders, with varying outcomes, we respectfully deem it

13

most prudent to have the motion reassigned to a different judge who can approach the matter from a fresh perspective. See Graziano v. Grant, 326 N.J. Super. 328, 350 (App. Div. 1999) (stating the power to remand a case to a different judge "may be exercised when there is a concern that the trial judge has a potential commitment to his or her prior findings."); see also Freedman v. Freedman, 474 N.J. Super. 291, 308 (App. Div. 2023) (remanding a matter to a different judge as the same judge "may have a commitment to her prior findings").

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1248-23