# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3419-23

K.C.,[1]

    Plaintiff-Respondent,

v.

G.P.,

    Defendant-Appellant.

_____

Submitted May 28, 2025 – Decided July 8, 2025

Before Judges Sumners and Bergman.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-2333-24.

Freidel and Kramer, PC, attorneys for appellant (Talbot B. Kramer, Jr., on the brief).

Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to protect the confidentiality of the victims in these proceedings. <u>R.</u> 1:38-3(d)(10).

Defendant G.P. appeals a final restraining order (FRO) entered against him under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to 2C:25-35. After our review of the record and application of the relevant legal principles, we vacate the FRO and remand for a new hearing because defendant was not afforded due process since the court did not inform defendant of the significant consequences of an FRO under the PDVA, N.J.S.A. 2C:25-30 and 2C:25-34.

I.

Plaintiff and defendant, a married couple, filed cross-complaints under the PDVA and obtained temporary restraining orders (TRO) against the other on January 25 and 29, 2024 respectively. The cross-complaints stemmed from domestic violence allegations occurring over the night of January 24-25, 2024. On January 29, the same day defendant obtained a TRO against plaintiff, the court called both matters for trial. The parties TROs, however, provided that a hearing date of February 22, 2024[2] was set for both parties' complaints.

At the hearing, the court questioned plaintiff if she was ready to proceed with both cases, and she initially indicated that she wished to have an attorney

---

[2] Defendant's merit briefing nor any documents in his appendix provide an explanation for the reasons the FRO hearing took place on January 29, 2024 or the reasons both parties were present in court on that date.

to assist her but subsequently stated she wished to proceed without counsel. Defendant then asked what case was being addressed, because plaintiff's complaint set a hearing on her complaint for February 22, 2024. The court responded that both complaints were being addressed now at the hearing. The court also inquired of defendant whether he was prepared to move forward on both matters and defendant answered "yes." Before the hearing started, the court did not specifically ask defendant if he understood his right to be represented by legal counsel. The record shows that the court did not inform either party of the consequences of an FRO being entered against them.

Thereafter, the court began the hearing and heard testimony from both parties. No other witnesses testified at the hearing. Relevant to this appeal, during the hearing, an exchange occurred between the court and defendant as follows:

| | |
|---|---|
| Defendant: | I'm sorry Your Honor, this is my first time that I'm trying to do it by myself. |
| Court: | You said you were ready to proceed and I suggested you get a lawyer and you said you were ready to proceed. Am I correct? |
| Defendant: | Yes, Your Honor. |

After all the testimony was concluded, the following colloquy between the court and defendant took place:

> Defendant: That's a first time for me trying to defend myself, Your Honor.
>
> Court: You have a lawyer?
>
> Defendant: I do have a lawyer, Your Honor.
>
> Court: When I mentioned about this proceeding today, and you decided you were ready to proceed without the lawyer. Is that correct?
>
> Defendant: Yes, Your Honor.

In its decision, the court found it "was satisfied" that defendant committed the predicate act of sexual assault against plaintiff. The court found that defendant's "allegations here are very weak" and failed to prove the predicate act of harassment against plaintiff. An FRO was granted to plaintiff and defendant's complaint was dismissed.

Defendant filed a motion for reconsideration on February 16, 2024 including a request for a new trial. The court denied the motion. Thereafter, defendant filed a second motion for reconsideration on April 12, seeking reconsideration of both the court's entry of an FRO against defendant and the court's denial of the first motion for reconsideration.

4

The trial court partially granted the motion for reconsideration. The court permitted defendant to obtain a transcript of the trial, required him to provide the transcript to plaintiff and the court, and listed the matter for further argument after the transcript was obtained. Upon the delivery of the transcript to the court and all parties, the court heard oral argument on defendant's motion.

At argument, defendant asserted he did not have a clear understanding of which case he was proceeding on at the time of the hearing. He asserted the presence of contemporaneous translation by the interpreter provided for plaintiff further compounded his confusion by making it more difficult to focus on the interaction with the court. After argument, the trial court denied the second motion for reconsideration.

On appeal, defendant asserts the court erred by failing to properly advise him of his rights and the consequences of an FRO when the court improperly accelerated the hearing date. He contends this error requires reversal and a new hearing. He further contends the trial court erred in failing to vacate the FRO and allow for a new trial in light of defendant's confusion and failure to understand and appreciate the nature of the proceedings against him.

A-3419-23

II.

Our scope of review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We owe substantial deference to the Family Part's findings of fact because of its special expertise in family matters. Id. at 413. A trial judge who observes witnesses and listens to testimony is in the best position to "make first-hand credibility judgments about witnesses who appear on the stand." N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008). However, we do not accord such deference to legal conclusions, which we review de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

"[O]rdinary due process protections apply in the domestic violence context, notwithstanding the shortened time frames for conducting a final hearing." J.D. v. M.D.F., 207 N.J. 458, 478 (2011). To "ensur[e] that defendants are not deprived of their due process rights requires our trial courts to recognize both what those rights are and how they can be protected consistent with the protective goals of the [PDVA]." Id. at 479. In this context, due process requires that a "defendant is given a meaningful opportunity to defend [] a complaint" against them. D.N. v. K.M., 429 N.J. Super. 592, 606 (App. Div. 2013).

A-3419-23

While due process does not guarantee the appointment of counsel, it does require that defendants understand their "right to retain legal counsel" and that they "receive[] a reasonable opportunity to retain an attorney." A.A.R. v. J.R.C., 471 N.J. Super. 584, 588 (App. Div. 2022). PDVA defendants must have "the opportunity to seek legal representation, if requested," and whether they are given such an opportunity is based on a "fact-sensitive" analysis. D.N., 429 N.J. Super. at 606.

In addition, given the wide range of adverse outcomes which face defendants in domestic violence proceedings, we must consider whether defendants have been made aware of the consequences which flow from entry of an FRO against them. Certain mandatory sanctions are imposed upon an FRO's entry, such as fingerprinting, N.J.S.A. 53:1-15 and inclusion in a central registry, N.J.S.A. 2C:25-34. A defendant who has been restrained is also prevented from "purchasing, owning, possessing or controlling a firearm." N.J.S.A. 2C:25-29. In addition to mandatory sanctions, the issuing court has the discretion to impose further conditions "impairing a defendant's interest in liberty and freedom in order 'to prevent further abuse.'" A.A.R., 471 N.J. Super. at 588 (quoting Peterson v. Peterson, 374 N.J. Super 116, 124 (App. Div. 2005)). As such, "due process also requires trial courts to apprise domestic violence

defendants, in advance of trial, of the serious consequences should an FRO be entered against them." Ibid.

We conclude that defendant was denied the relevant due process protections required by the PDVA. Although during the hearing the court asked defendant whether he wanted to "proceed without [a] lawyer," he was never specifically advised of his right to engage counsel until midway through the hearing nor did defendant specifically state that he understood he was waiving his right to legal counsel.

Even if we considered the mid-hearing discussions between defendant and the court to constitute a knowing waiver by defendant of his right to legal counsel, it is clear from the record that the court failed to inform defendant of the potential serious consequences that would follow the entry of an FRO against him before or at any time during the hearing. As a result of this flaw alone, we conclude the hearing conducted by the trial court did not comport with due process.

We reverse the order entering an FRO against defendant and reinstate the prior TRO. We remand to the trial court for a new FRO hearing consistent with the guidance set forth in A.A.R., 471 N.J. Super. at 588. We do not reach defendant's second point on appeal as we determine it is now moot. On remand,

the case should be reassigned. R. 1:12-1(d); Pressler & Verniero, Current N.J. Court Rules, comment 4 on R. 1:12-1 (2013) ("[A] matter remanded after appeal for a new trial should be assigned to a different trial judge if the first judge had, during the original trial, expressed conclusions regarding witness credibility."); see also Graziano v. Grant, 326 N.J. Super. 328, 349 (App. Div. 1999) (stating the power to remand to a different judge "may be exercised when there is a concern that the trial judge has a potential commitment to [the judge's] prior findings.")

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division