642 A.2d 1032

DAVID LEEPER, PLAINTIFF–RESPONDENT, v. ARTHUR WEINTRAUB, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted April 19, 1994—Decided May 23, 1994.

Before Judges BRODY, STERN and KEEFE.

*Arthur Weintraub,* appellant, filed a *pro se* brief.

*David Leeper,* respondent, filed a *pro se* brief.

The opinion of the court was delivered by

BRODY, P.J.A.D.

■ Defendant (seller) appeals from a judgment in the amount of $1,384 entered against him in the Special Civil Part of the Law Division. The sum represents damages, mostly attorney's fees, that plaintiff (buyer)[1] incurred in attempting to purchase a house from the seller. The seller canceled the contract of sale because the buyer did not receive a written mortgage commitment by the deadline set in the contract. The trial judge held that an oral commitment satisfied the contract's mortgage contingency clause. In reversing, we hold that a mortgage lender is not bound by an oral commitment and therefore an oral commitment does not satisfy a mortgage contingency clause that is silent as to whether the commitment must be in writing.

The contingency clause here appears in the contract as follows:
*IF THE BUYER FAILS TO OBTAIN SUCH MORTGAGE COMMITMENT OR FAILS TO WAIVE THIS CONTINGENCY BEFORE NOVEMBER 20, 1992, THE BUYER OR SELLER MAY VOID THIS CONTRACT BY NOTIFYING THE OTHER PARTY WITHIN TEN (10) CALENDAR DAYS OF THE EXPI-RATION OF THE AFOREMENTIONED DATE.* The method of notifying the other party shall be in accordance with Section 27 of this Agreement. *IF THE BUYER OR THE SELLER DOES NOT SO NOTIFY THE OTHER PARTY*

---

[1] The contract buyers are David M. Leeper and Melody L. Leeper, who we learn from the record are husband and wife. David alone commenced this action *pro se.* Our references to "buyer" include both spouses.

*WITHIN THIS SPECIFIED TIME PERIOD, THE BUYER AND SELLER WAIVE THEIR RIGHTS UNDER THIS SECTION TO VOID THE CONTRACT.*

During the attorney review period, the seller's attorney initiated the following amendment to the contract: "There shall be no waiver by silence of the mortgage contingency clause."

In a "P.S." to a letter dated November 19, 1992, the buyer's attorney advised the seller's attorney, "I just received word from the lender that the Leepers were verbally approved." That letter apparently was not received before the seller's attorney sent the buyer's attorney a letter dated November 20, the buyer's deadline for obtaining a mortgage commitment, that declared the following:

I have been given unequivocal instructions by my client. There will be no extension of any contingencies. Therefore, since your client has not waived the mortgage contingency clause my client has instructed me that pursuant to the contract, he is invoking the mortgage contingency clause and the contract is hereby declared null and void. I am by copy of this letter advising the realtor to return all deposit monies to your client.

I would also mention that we never resolved the significant home inspection issues.

Thereafter, the seller's attorney responded to the buyer's attorney's November 19 letter by letter dated November 23. That response states in part:

I am in receipt of your letter of November 19, 1992 which was faxed on November 20, 1992.

\*       \*       \*       \*       \*       \*       \*       \*

A sine qua non of the contract was that your clients were to have a written mortgage commitment by November 20, 1992. Same has not been secured. In fact, we received a request for an extension. Since you requested an extension, it would seem perfectly obvious to anyone that we have two choices—(1) we can agree to an extension or; (2) we can agree not to give you an extension. We chose the latter.

Your own letter talks about verbal approval. Well, verbal approval is not worth the paper it's printed on.

A written notice to the buyer that the mortgage lender approved his application was dated November 25, 1992.[2]

---

[2] The buyer placed in evidence a printed document entitled "Transmittal Summary" that bears someone's signature .next to the handwritten date

An agreement to give a mortgage loan must be in writing to satisfy the statute of frauds. *N.J.S.A.* 25:1–5 provides in relevant part:

> No action shall be brought upon any of the following agreements or promises, unless the agreement or promise, upon which such action shall be brought or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person thereunto by him lawfully authorized:

> \* \* \* \* \* \* \* \*

> d. A contract for sale of real estate, or any interest in or concerning the same;
> . . .

"[A]n agreement to give a mortgage on real property creates an interest in real estate within the Statute of Frauds[.]" *Cauco v. Galante*, 6 *N.J.* 128, 137, 77 *A.2d* 793 (1951). *Feldman v. Warshawsky*, 125 *N.J.Eq.* 19, 20, 4 *A.2d* 84 (E. & A.1938).

An oral mortgage commitment is not enforceable because of the statute of frauds; therefore it does not satisfy a mortgage contingency clause. A seller does not have to assume the risk that an enforceable written commitment will not issue. If the buyer wanted to prevent the seller from voiding the contract, he could have assumed that risk himself by waiving the mortgage contingency clause as permitted in the contract of sale.

The judgment is reversed.

---

"11/20/92." Blanks in the document are completed with financial data that include the buyer's income and the amount of the mortgage loan that the lender ultimately agreed to give. The buyer contends in his brief that this is written proof that his mortgage application was approved on November 20. The only evidence of the function of this form appears in very small print at its bottom: "Fannie Mae Form 1008 Oct. 85." Whatever that may mean, there is no dispute that the written commitment did not issue to the buyer until November 25, 1992.