769 A.2d 1102

KENNETH W. GROSS & BONNIE D. GROSS, PLAINTIFF–RESPONDENT, v. VIVIAN LASKO, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 24, 2000—Decided March 30, 2001.

Before Judges STERN and COLLESTER.

*Lario & Saldutti,* and *Eizen, Fineburg & McCarthy,* attorneys for appellant (*Marc A. Lario* and *Gary J. McCarthy,* on the brief).

*Klehr, Harrison, Harvey, Branzburg & Ellers,* attorneys for respondents (*Carol Ann Slocum* and *Marc H. Stofman,* on the brief).

The opinion of the court was delivered by

COLLESTER, J.A.D.

Defendant, Vivian Lasko, appeals from a judgment of specific performance which ordered her to deliver a deed to plaintiffs, Kenneth W. Gross and Bonnie D. Gross, pursuant to a contract of sale signed in March 1999. The matter was tried summarily on certifications filed with the trial judge. On September 7, 1999, Judge Callinan concluded in a letter opinion that plaintiffs were entitled to specific performance. We affirm.

The salient facts are as follows. In February 1999, plaintiffs, who were residents of Pennsylvania, were searching for a vacation home in Avalon, New Jersey and using the services of Sandra Struble, a licensed real estate agent. Defendant's property located at 39 Flamingo Avenue in Avalon, was listed for sale with Miriam Kauterman, also a New Jersey licensed real estate agent. On March 20, 1999, a contract of sale was signed for the purchase of the property for a total purchase price of $680,000. Plaintiffs provided an initial deposit of $64,000, and the remaining balance of

$616,000 was to be paid at the time of closing scheduled for May 17, 1999.

The agreement contained a mortgage financing contingency, which read as follows:

[t]he Buyer and Seller agree to make a good faith effort to obtain mortgage financing upon the terms listed below. The Buyer has until April 14, 1999, to obtain a commitment for this mortgage financing or to agree to buy the property without this mortgage financing. After this deadline, and any agreed upon extension, either party may cancel this contract if the mortgage as stated below has not been obtained. Buyer agrees to apply for said mortgage within 5 days of the final execution of this agreement (i.e., when all parties have signed it).

Type of Mortgage Financing: CONVENTIONAL Points: Not to Exceed to Buyer: 3.0, Seller: 0.0, Amount of Mortgage Financing: $440,000.00, Interest Rate: (Not to Exceed) 7¼%, Length of Mortgage Financing: 30 years with monthly payment based on a 30 year payment schedule.

The Buyer may agree at their option to accept other financing which is adequate for the Buyer to complete settlement. The Buyer's acceptance of such financing will remove the Mortgage Financing Contingency above.

On April 9, 1999, Kauterman advised Struble that defendant no longer wanted to sell the property. Struble told plaintiffs, but they had no interest in canceling the contract since they had made plans for modifications to the property and bought furniture in anticipation of the closing. The following day plaintiffs met with Kauterman, who confirmed that defendant wanted out of the agreement. Plaintiffs told Kauterman that they were not willing to cancel and would proceed to closing without mortgage financing. The next day Kauterman advised defendant that plaintiffs wanted the property and were ready to close without mortgage financing. A few days later Kauterman told plaintiffs that defendant understood that she had to complete the sale and that she had been to Kauterman's office to sign a lease on another house for the summer. At no time did Kauterman suggest the defendant was awaiting written notice of plaintiffs' election to proceed without mortgage financing.

However, by letter of April 20, 1999, defendant's attorney informed plaintiffs that defendant was canceling the contract for plaintiffs' "default under Section 23," because they failed to provide defendant with written notice that they were waiving the

mortgage financing contingency. Paragraph 23 defined "buyers' default" in the contract as a failure "to fulfill or perform any of the terms or conditions of this agreement," and gave the seller the option to cancel and retain all deposits.

Two days later plaintiffs' attorney wrote that plaintiffs insisted on the purchase of the property. He also stated that the contract gave plaintiffs until April 14, 1999, to obtain mortgage financing or to elect to buy the property without such financing and that plaintiffs had notified defendant's agent on April 10, 1999, that they intended to proceed with the purchase without a mortgage. Defendant's attorney responded that defendant denied being informed by Kauterman that plaintiffs intended to waive the mortgage contingency provision and that, in any event, no notification of the waiver was received in writing.

The central issue at trial was whether written notice was necessary to waive the mortgage contingency clause. Plaintiffs argued that if written notification was required, the contract should have so stated in the mortgage contingency clause. Defendant denied receiving oral notice of the waiver and further relied upon a separate paragraph of the contract, which specified that

"All notices under this contract must be in writing. The notices must be delivered personally or mailed by certified mail, return receipt requested, to the other party at the address written in this contract, or the parties' attorney."

Judge Callinan found that plaintiffs had informed defendant's agent on April 10, 1999, that they intended to proceed without mortgage financing, that defendant knew of plaintiff's intention before the expiration of the mortgage contingency on April 14, 1999, and that she was not prejudiced in any way by plaintiffs' election to meet the purchase price without a mortgage. With respect to defendant's argument that the contract of sale required written notification, the judge noted that there was no such provision in the mortgage contingency clause. He also held that the requirement of a written mortgage commitment did not equate to a mandate that plaintiffs notify defendant in writing of their desire to proceed on an all cash basis. Finding no valid reason for

defendant's failure to perform, Judge Callinan ordered specific performance.

On appeal defendant argues that Judge Callinan erred because the contract contained a "perpetual mortgage contingency clause" as opposed to a "self-terminating mortgage contingency clause." She contends that the perpetual mortgage contingency gave her the unilateral right to void the contract because plaintiffs did not notify defendant in writing of the removal of the mortgage contingency.

This distinction between self-terminating and perpetual mortgage contingency clauses was never raised before the trial judge. It is well established that we will not consider matters not properly presented to the trial court unless the question goes to the trial court's jurisdiction or is an issue "of sufficient public concern." *Alan J. Cornblatt, P.A. v. Barow,* 153 *N.J.* 218, 230, 708 *A.*2d 401 (1998); *Brown v. Township of Old Bridge,* 319 *N.J.Super.* 476, 501, 725 *A.*2d 1154 (App.Div.), *cert. denied,* 162 *N.J.* 131, 741 *A.*2d 99 (1999). This self-terminating versus perpetual mortgage contingency clause dichotomy does not relate to jurisdictional matters, nor does it have any earmark of a matter vested with sufficient public concern.

Defendant gives no substantiation of authority for the dichotomy she presents. Moreover, even under defendant's definition, the clause fits within a self-terminating mortgage contingency clause since it "exists if upon the expiration of the stated mortgage contingency period the mortgage contingency is automatically removed." The language of the mortgage contingency herein states that it is automatically removed upon the buyer's acceptance of alternative financing before April 14, 1999.

Defendant's central argument echoes her position at trial that the agreement required written notice by plaintiffs of an election to waive the mortgage contingency clause since it specifically stated that "all notices under this contract must be in writing." However, while other clauses of the agreement refer to

"notice," there is no such language in the mortgage financing contingency provision.[1]

Therefore, we agree with Judge Callinan's conclusion that had the parties intended that plaintiffs provide written notice of their decision to buy the property without mortgage financing, such a requirement would have appeared in the pertinent paragraph of the contract. We will not infer such a requirement from the language of this agreement.

■ Defendant also argues that the statute of frauds requires written notice of the intent to proceed to closing without mortgage financing be read into the contract. The statute, *N.J.S.A.* 25:1–13, renders an agreement to transfer an interest in real estate unenforceable unless it is in writing, signed by the party against whom enforcement is sought, and meets other requirements which do not relate to a mortgage contingency clause waiver option. Defendant cites four cases in support of her contention. All are distinguishable.

In *Willow Brook Recreation Ctr., Inc. v. Selle,* 96 *N.J.Super.* 358, 233 *A.*2d 77 (App.Div.), *certif. denied,* 51 *N.J.* 187, 238 *A.*2d 473 (1968)[2], we affirmed summary judgment granted to defendants on the ground that the statute of frauds required that an

---

[1] Only three paragraphs of the Agreement of Sale contain references to notice, while two provisions require a writing: ¶ 18 "Correcting Defects" requires that the seller "be notified" and be given thirty days to bring the property into compliance with building and zoning laws, and properly line violations; ¶ 22 "Cancellation of Contract" requires either party to give "written notice to the other" if they elect to cancel under the circumstances described in the contract; and ¶ 32 "Attorney Review" requires that if the attorney for either party disapproves of the contract, that attorney "must notify the brokers and the other party named in the contract within the three day period." Paragraph 6 "Closing" permits extension of the closing date if the buyer and seller "agree in writing" and ¶ 32 (Attorney Review) permits the buyer and seller to "agree in writing to extend the three day period for attorney review."

[2] It is noted that amendments to the Statute of Frauds adopted in 1995, effective in 1996 do not effect the applicability of *Willow Brook, Melcer, Leeper* or *Schultz* in our current analysis.

agreement extending the time to exercise an option to lease lands be in writing. In so doing, we held that an oral agreement extending the time to exercise an option was tantamount to the grant of a new option of that extended period and thereby required compliance with the statute of frauds in order to be enforceable.

The instant case is clearly distinguishable since the contract of sale was in writing and provided plaintiffs with an option to obtain a mortgage commitment or to accept alternative financing. No new contract requiring an offer and acceptance was created by plaintiffs' election to waive the mortgage contingency clause.

*Freedman v. Clonmel Constr. Corp.*, 246 *N.J.Super.* 397, 587 *A.*2d 1291 (App.Div.1991), is similarly inapplicable. There we held that a mortgage contingency clause waiver prepared by a broker was void because it was not subjected to attorney review. In this instance, the mortgage contingency clause was part of the written contract and not a separate post-contract document prepared by the broker, and the mortgage contingency clause was subjected to the attorney review period. Plaintiffs simply exercised an option available to them, to obtain alternative financing, an option not couched in language requiring a writing.

In *Melcer v. Zuck*, 101 *N.J.Super.* 577, 245 *A.*2d 61 (App.Div.), *certif. denied*, 52 *N.J.* 498, 246 *A.*2d 456 (1968) [3] the dispute concerned the sale of real property for which the defendant seller could not guarantee ingress and egress by the time of closing. The plaintiff demanded an abatement of the purchase price, but the contract only obligated the seller to return deposit monies and search fees. The trial judge granted specific performance of the contract with the demanded abatement, finding that the contract had been orally modified. We reversed because the oral modification of the contract was unenforceable as violative of the statute of frauds. In the instant case however, plaintiffs' decision to exercise

---

[3] See footnote 2.

their option to purchase defendant's property in cash was not a modification but part and parcel of the written contract.

Finally, while *Leeper v. Weintraub,* 273 *N.J.Super.* 532, 642 *A.*2d 1032 (App.Div.1994)[4], held that an oral mortgage commitment is unenforceable under the statute of frauds, the case at bar does not involve an oral mortgage commitment. In that case, the defendant seller canceled his contract of sale because the plaintiff did not receive a written mortgage commitment by the deadline provided in the contract. The plaintiff's attorney advised the defendant's counsel that the plaintiff had been verbally approved, but the mortgage was not actually approved until five days after the contractual deadline. We reversed a judgment against the defendant, holding that only a written mortgage commitment could satisfy a mortgage contingency clause within the statute of frauds. We said that "a seller does not have to assume the risk that an enforceable written commitment will not issue. If the buyer wanted to prevent the seller from voiding the contract, he could have assumed that risk himself by waiving the mortgage contingency clause as permitted in the contract of sale." *Id.* at 535, 642 *A.*2d 1032. Plaintiffs in the present case have done precisely that by electing to proceed on a cash basis and thereby waiving their mortgage contingency in a timely manner.

A case on point is *Schultz v. Topakyan,* 193 *N.J.Super.* 550, 475 *A.*2d 91 (App.Div.), *certif. denied,* 99 *N.J.* 207, 491 *A.*2d 704 (1984)[5], in which we dealt with the issue of whether a notification requirement would be implied in a mortgage contingency clause which provided a sixty-day period within which to obtain the commitment. The contract in *Schultz* required the buyer to make a good faith effort to obtain a mortgage commitment within sixty days or buy the property without a mortgage. If the commitment was not obtained before the deadline, the contract could be canceled by either party. The plaintiffs obtained a mortgage

---

[4] See footnote 2.

[5] See footnote 2.

commitment before the sixty day expiration date. However, they were on vacation and did not notify the sellers of the commitment until a few days after the sixty day expiration date. In the meantime, because the sellers heard nothing, they informed the purchasers in writing that they were not willing to extend the mortgage contingency period and declared the contract void.

The trial court denied the purchasers' suit for specific performance, concluding that notice was implicit in the mortgage contingency clause because the time for fulfilling contingency was of the essence and, if not strictly complied with, rendered the contract voidable. We disagreed and held that an intention to make time of the essence with regard to communication of notice would have to be specifically set forth in the contract or clearly implied from the surrounding circumstances. *Id.* at 553, 475 *A.2d* 91. Once the commitment was obtained, the contract became binding upon the purchasers, and "in the absence of a specific written provision for notice, the buyers fulfilled this contingency when they received a commitment within the sixty days and notified the sellers within a reasonable time that it had been obtained." *Id.* at 554, 475 *A.2d* 91. We also noted that a day or two before the commitment was issued by the lender, the seller's attorney had been orally notified that it was imminently forthcoming. *Ibid.*

The applicability of *Schultz* is apparent. In this case there is no specific provision requiring plaintiffs to notify defendant in writing of their decision opting to waive the mortgage contingency clause. In *Schultz* we refused to imply a requirement of written notice of commitment within the contingency period in a mortgage contingency clause. We opted to apply principles of reasonableness to the situation and concluded that the notice given was reasonable.

In the present case, the trial judge found plaintiffs provided defendant with notice of their election to waive the mortgage contingency clause four days before that contingency expired. There was obvious compliance with the agreement. Defendant seeks to have the contract of sale rewritten to include a written notice requirement never placed therein. It is not the function of

any court to make a better contract for the parties by supplying terms that have not been agreed upon. *Graziano v. Grant,* 326 *N.J.Super.* 328, 342, 741 *A.*2d 156 (App.Div.1999); *Schenck v. HJI Assocs.,* 295 *N.J.Super.* 445, 450, 685 *A.*2d 481 (App.Div.1996), *certif. denied,* 149 *N.J.* 35, 692 *A.*2d 48 (1997). Where the terms of a contract are clear, the court must enforce it as written and not make a more advantageous contract for either party. *Graziano, supra,* 326 *N.J.Super.* at 342, 741 *A.*2d 156; *Schenck, supra,* 295 *N.J.Super.* at 450, 685 *A.*2d 481. The mortgage contingency clause in the present case could not be more clear. There is no written notice requirement, and we will not imply one to give a better contract to defendant.

The remaining arguments raised by defendant are without sufficient merit to warrant discussion in a written opinion. *R.* 2:11–3(e)(1)(E).

Affirmed.