**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2210-15T3

MARLY CARO, on behalf of
A LIMITED LIABILITY COMPANY
or CORPORATION TO BE FORMED,

    Plaintiff-Respondent,

v.

WILLIAM PEREZ,

    Defendant-Appellant.

_____

           Submitted May 10, 2017 — Decided June 26, 2017

           Before Judges Alvarez and Manahan.

           On appeal from Superior Court of New Jersey,
           Chancery Division, Hudson County, Docket No.
           C-7-15.

           The Abraham Law Firm, LLC, attorneys for
           appellant (Markis M. Abraham, on the briefs).

           Vincent J. La Paglia, attorney for respondent.

PER CURIAM

    Defendant William Perez appeals from an order for specific performance entered in favor of plaintiff Marly Caro following a bench trial.  We affirm.

We discern the following facts from the trial record. In April 2013, plaintiff approached defendant and advised him that she was interested in purchasing defendant's property located at 364-366 Palisades Avenue, Jersey City, New Jersey (the property). Predicated upon that conversation, a contract of sale was prepared by plaintiff's attorney, Vincent La Paglia. The contract provided for a purchase price of $750,000, comprised of a $75,000 deposit, financing of $525,000, and a cash payment due at closing of $150,000.[1] Paragraph 6 of the contract recited a mortgage contingency clause.

> The [b]uyer agrees to make a good faith effort to obtain a first mortgage loan upon the terms listed below. The [b]uyer has until 60 [days after conclusion of inspection contingency] to obtain a commitment from a lender for this mortgage loan or to agree to buy the [p]roperty without this loan. If this is not done before this deadline, and any agreed-upon extensions, either party may cancel this [c]ontract.

After approval from defendant's attorney, Joseph Greco, both parties signed the contract on June 7, 2014.

---

[1] While the contract indicated that the deposit was previously paid, plaintiff and La Paglia both testified the deposit money remained in La Paglia's trust account. Plaintiff was not aware of the deposit payment status until December 2014.

Plaintiff subsequently applied for a loan and La Paglia ordered a title report. The title report revealed issues that had to be addressed prior to the closing.

Sometime in July or August 2014, after plaintiff sold property she owned in Brazil, she advised defendant of her intention to purchase the property without mortgage financing. Defendant did not object and told plaintiff to speak with her attorney.

By letter dated August 25, 2014, La Paglia corresponded to Greco that "[m]y client advises she should have mortgage commitment within the next two (2) weeks. Subject to clear title, we should be in a position to close." The letter further stated that the preliminary title binder disclosed judgments against defendant, as well as two open mortgages on the property, both of which were in foreclosure.

In November 2014, defendant listed the property for sale with a broker and placed a sign on the property. After observing the sign, plaintiff removed it and contacted her attorney. Plaintiff stated that she also contacted defendant.

Defendant's attorney mailed and faxed a letter, dated November 24, 2014, which declared the contract "cancelled and null and void for failure of the buyer to make the required deposit of escrow monies and passage of time without furnishing a mortgage commitment." The next day, via email, plaintiff's attorney

rejected defendant's attempt to terminate the contract and advised that plaintiff intended to proceed on an all-cash basis. Further, plaintiff's letter stated that "the reason this matter has not closed is [defendant's] inability, at this stage, to satisfy the title requirements[.]" Defendant refused to close title and entered into a sales contract with a third party for $1 million.

On January 9, 2015, plaintiff filed a three-count complaint seeking specific performance of a contract for the sale of real estate. Additionally, plaintiff pled breach of contract and requested restraints. On the same day, plaintiff filed a notice of lis pendens.[2] Defendant filed an answer with a counterclaim on February 17, 2015, alleging tortious interference with a prospective economic advantage, tortious interference with contractual relation, and unlawful interference with contractual relations.[3] Plaintiff filed an answer to the counterclaim on March 4, 2015.

A bench trial was held on December 8, 2015, before Judge Hector Velazquez. At trial, the judge heard testimony from plaintiff, La Paglia, and Stephen Flatlow, the attorney who conducted title services, on plaintiff's behalf. Defendant

---

[2] The lis pendens is not part of the record on appeal.
[3] Defendant's motion for summary judgment, plaintiff's opposition, and the court order denying summary judgment are not part of the record on appeal.

testified on his own behalf. Defendant moved for a directed verdict after plaintiff rested, which was denied. After both parties rested, the judge rendered an oral opinion. In his opinion, the judge held that plaintiff was not in material breach for her failure to make a timely deposit. The judge also dismissed defendant's counterclaim.

In addition to his oral opinion, the judge issued a seven-page written opinion, reaffirming that (1) plaintiff was not in material breach for her failure to make the deposit pursuant to the contract; and determining that (2) the contract did not require plaintiff to give written notice of her election to proceed without a mortgage; and (3) equity dictates the court to compel defendant to specifically perform under the terms of the contract and deliver a deed at the time and place scheduled for closing. As a result, the judge entered a judgment of specific performance in favor of plaintiff on December 22, 2015. All other counts in the complaint were dismissed and any request for compensatory damages was denied. This appeal followed.[4]

Defendant raises the following points on appeal:

---

[4] Following the filing of the notice of appeal, the judge entered an order staying the enforcement of the judgment pending appeal and ordering defendant to post a bond.

## POINT I

THE TRIAL COURT ERRED IN GRANTING SPECIFIC PERFORMANCE BECAUSE THE CONTRACT OF SALE WAS VOID AND UNENFORCEABLE AND THE DEFENDANT'S TERMINATION WAS VALID.

A. [PLAINTIFF] COMMITTED A MATERIAL BREACH OF CONTRACT BY FAILING TO MAKE THE DEPOSIT. THEREFORE, THE CONTRACT WAS UNENFORCEABLE AND VALIDLY TERMINATED.

1. [PLAINTIFF] DID NOT PROVIDE CONSIDERATION FOR THE CONTRACT TO PURCHASE THE PROPERTY THEREFORE THE CONTRACT WAS VOID.

2. [PLAINTIFF'S] FAILURE TO MAKE THE DEPOSIT WAS A MATERIAL BREACH OF CONTRACT.

B. [PLAINTIFF] DID NOT OBTAIN A MORTGAGE COMMITMENT WITHIN THE CONTINGENCY PERIOD, SHE COULD NOT UNILATERALLY WAIVE [DEFENDANT'S] RIGHT TO CANCEL THE CONTRACT PURSUANT TO THE MORTGAGE CONTINGENCY CLAUSE, AND THEREFORE, [DEFENDANT] HAD A RIGHT TO TERMINATE THE CONTRACT.

1. [PLAINTIFF] HAD NO RIGHT TO WAIVE [DEFENDANT'S] RIGHTS UNDER THE MORTGAGE CONTINGENCY.

2. [PLAINTIFF] DID NOT OBTAIN A MORTGAGE COMMITMENT WITHIN THE CONTINGENCY PERIOD,

6

THEREFORE THE CONTRACT
WAS VOIDABLE.

C. SPECIFIC PERFORMANCE WAS NOT
APPROPRIATE BECAUSE THE EQUITIES
MAKE ENFORCEMENT OF THE CONTRACT
AGAINST [DEFENDANT] TOO HARSH.

POINT II

THE TRIAL COURT ERRED BY DISMISSING THE
DEFENDANT'S COUNTERCLAIM BECAUSE THERE WAS
EVIDENCE THE TERMINATION OF CONTRACT WAS VALID
AND THERE WAS EVIDENCE IN THE RECORD THE
DEFENDANT SUFFERED DAMAGES.

Our review of a decision following a bench trial is limited by well-settled principles. Sebring Assocs. v. Coyle, 347 N.J. Super. 414, 424 (App. Div.), certif. denied, 172 N.J. 355 (2002). "We do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence." State v. Barone, 147 N.J. 599, 615 (1997). We accord deference to the findings of fact by the court after a non-jury trial, provided the findings are supported by substantial credible evidence in the record as a whole. Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974). We owe no deference, however, to a trial court's conclusions of law. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

On appeal, defendant argues the deposit, which amounts to ten percent of the contract price, was a material term of the contract that required defendant to forego his right to market the property

at a higher price, as well as for defendant's security during the mortgage commitment process, and to measure plaintiff's commitment to close the transaction. Furthermore, defendant argues that he was entitled to terminate the contract because plaintiff did not obtain a mortgage commitment within the contingency period, nor did she notify defendant in writing that she wished to proceed with an all-cash deal.

Every failure to perform as required by a contract, even a small failure, is a breach that gives rise to a claim for damages. Restatement (Second) of Contracts § 236 comment a (1981). A breach is material if it "goes to the essence of the contract." Neptune Research & Dev., Inc., v. Teknics Indus. Sys., Inc., 235 N.J. Super. 522, 531 (App. Div. 1989) (quoting Ross Sys. v. Linden Dari-Delite, Inc., 35 N.J. 329, 341 (1961)). Whether a breach is material is a question of fact. Murphy v. Implicito, 392 N.J. Super. 245, 265 (App. Div. 2007); Magnet Res., Inc. v. Summit MRI, Inc., 318 N.J. Super. 275, 286 (App. Div. 1998).

"[I]f during the course of performance one party fails to perform essential obligations under the contract, he may be considered to have committed a material breach and the other party may elect to terminate it." Ingrassia Constr. Co., Inc. v. Vernon Twp. Bd. of Educ., 345 N.J. Super. 130, 136-37 (App. Div. 2001) (citation and internal quotation marks omitted). The key question

is whether the breach affected the ultimate goal of the contract only tangentially, or whether it "goes to the essence of a contract." Neptune Research, supra, 235 N.J. Super. at 531 (citation omitted). For breaches that are not "material," the duty of both parties to perform remains intact. Magnet Res., Inc., supra, 318 N.J. Super. at 285.

We have described a material breach as:

> Where a contract calls for a series of acts over a long term, a material breach may arise upon a single occurrence or consistent recurrences which tend to "defeat the purpose of the contract." . . . In applying the test of materiality to such contracts a court should evaluate "the ratio quantitatively which the breach bears to the contract as a whole, and secondly the degree of probability or improbability that such a breach will be repeated."
>
> [Id. at 286 (quoting Medivox Prods., Inc. v. Hoffmann-La Roche, Inc., 107 N.J. Super. 47, 59 (Law Div. 1969))].

The Restatement (Second) of Contracts § 241 (1981) sets forth the following criteria to determine whether a breach is material:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Here, the judge addressed the issue of the materiality of plaintiff's failure to make a timely deposit when addressing defendant's motion for a directed verdict:

With respect to the deposit, there is case law in this jurisdiction that would indicate that the failure to provide a deposit would not be a material breach of the contract that would allow for the cancellation of a contract for the sale of property, especially in a situation like this, where there was obviously a mistake made on [] the contract, which indicates that the deposit of [$75,000] was previously paid. Everyone, I guess, believed that that, in fact, was done. And it wasn't until, I guess, November of that year, when there was an attempt to cancel this contract that the parties actually recognized or realized that no deposit was [] provided.

The [c]ourt notes and [] gives great importance to the fact that Mr. Greco, [] as the attorney for [defendant] in this case, never requested the deposit, even though obviously, as the attorney for the seller, also has the obligation to review the contract terms. And interestingly enough, in this case, there was [] no request for the deposit. So I don't think the failure of the deposit would provide this [c]ourt or obligate this [c]ourt to find that there was a material breach that would allow for cancellation of

10

the contract. But at this juncture, this [c]ourt would not enter judgment in favor of [] the plaintiff on that basis alone.

Furthermore, at the conclusion of the bench trial, the judge held in his oral opinion:

I don't think there's any evidence here that would support this [c]ourt denying or voiding this contract simply because [] of a mistake made with respect to this deposit. No one cared about the deposit; no one asked about it; no one questioned it. Mr. La Paglia, unfortunately, made a mistake with respect to this contract. He assumed that [] the deposit was made when it was not made. Mr. Greco also made a mistake. He assumed somebody had the deposit or frankly, he didn't really understand what the provision said. But neither of the attorneys, both highly respected in the community and experienced real estate practioners, gave a damn about the deposit, right? No one cared because the deal was we're trying to resolve these title issues. The deposit, I'm sure is there somewhere and if it's not there, we'll get it there and nobody cared about it.

We agree that plaintiff's failure to make a timely deposit in accordance with the terms of the sales contract did not constitute a material breach, as it did not defeat the overall purpose of the contract. See Magnet Res., Inc., supra, 318 N.J. Super. at 286. Furthermore, plaintiff remedied the breach after notice. See id. at 287. The essence of the contract was the sale of the property to plaintiff for the agreed upon price of $750,000 for which she remained ready and willing to perform. See Stamato

11

v. Agamie, 24 N.J. 309, 316 (1957) (citation omitted) ("[T]he general rule is that he who seeks performance of a contract for the conveyance of land must show himself ready, desirous, prompt, and eager to perform the contract on his part.")

Concededly, it would have been optimal had plaintiff promptly made the deposit. Indeed, under other circumstances, plaintiff's failure to provide payment may have defeated her claim for specific performance. However, when considered in context, the oversight in making timely payment of the deposit did not impact upon plaintiff's ability to perform her obligation to close title nor did it otherwise disturb the contract's equilibrium.

We next turn to the mortgage contingency clause. In addressing defendant's arguments regarding the mortgage contingency clause, the judge concluded that there was no written notice requirement under the express terms of the contract:

> In order to decide this case, the [c]ourt must determine the meaning of paragraph 6 of the [s]ales [c]ontract. To determine the meaning of the terms of an agreement by the objective manifestations of the parties' intent, the terms of the contract must be given their "plain and ordinary meaning." Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997). "A writing is interpreted as a whole and all writings forming part of the same transaction are interpreted together." Barco Urban Renewal Corp. v. Housing Auth. of Atlantic City, 674 F.2d 1001, 1009 (3d Cir. 1982) (citing Restatement (Second) of Contracts § 202(2) (1981)). A

12

"court should not torture the language of [a contract] to create ambiguity." Stiefel v. Bayly, Martin & Fay, Inc., 242 N.J. Super. 643, 651[ (App. Div. ]1990). "In the quest for the common intention of the parties to a contract, the court must consider the relations of the parties, the attendant circumstances, and the objects they were trying to attain." Anthony L. Petters Diner, Inc. v. Stellakis, [202 N.J. Super. 11, 28] (App. Div. 1985). In the interpretation of a contract, the court's goal is to ascertain the intention of the parties as revealed not only by the language used but also with reference to the surrounding circumstances and the relationships of the parties at the time it was entered into. Driscoll Constr. Co.[, Inc.] v. N.J. Dep't of Transp., 371 N.J. Super. 304, 313 (App. Div. 2004); Graziano v. Grant, 326 N.J. Super. 328, 342 (App. Div. 1999).

Defendant's argument that the [p]laintiff failed to provide timely written notice of the mortgage commitment or of her election to proceed without mortgage financing fails simply because [p]laintiff was not required to provide such notice. See Schultz v. Topakyan, 193 N.J. Super. 550, 554-53 (App. Div.[]) ([c]ourt refused to imply a requirement of written notice of commitment within the contingency period of a mortgage contingency clause), [certif. denied, 99 N.J. 207 (1984)]; Gross v. Lasko, 338 N.J. Super. 476, 484-85 (App. Div. 2001) ([w]here there is no specific provision requiring a buyer to notify a seller in writing of buyer[']s decision to waive the mortgage contingency clause, the [c]ourt refused to imply one[).] Here, there is no specific provision in the contract requiring the [p]laintiff to give written notice of either, a loan commitment or an intent to proceed without mortgage financing.

13

In arguing that written notice is required, [d]efendant points to paragraph 29 of the contract which specifies that "[a]ll notices under this contract must be in writing." However, while other clauses in the contract may refer to "notice," there is no such language in the mortgage contingency clause. Like the courts in Schultz and Gross, this [c]ourt will not infer such a requirement from the language in this contract. To imply a requirement of written notice in this clause would require this [c]ourt to rewrite the contract to include a written notice requirement that was never agreed to. "It is not the function of any court to make a better contract for the parties by supplying terms that have not been agreed upon." [Graziano, supra, 326 N.J. Super. at 342]; Schenck v. HJI Assocs., 295 N.J. Super. 445, 450 (App. Div. 1996). "Where the terms of a contract are clear, the court must enforce it as written and not make a more advantageous contract for either party." [Gross, supra, 338 N.J. Super. at 486.] The mortgage contingency clause in this case is clear and unambiguous. There clearly is no written notice requirement, and this [c]ourt will not imply one to give a better contract than that intended by the [d]efendant.

In any event, the competent evidence demonstrates that the [d]efendant had actual notice of the [p]laintiff's election to proceed without mortgage financing. Both parties testified that during a meeting in July or August 2014, the [p]laintiff told the [d]efendant that she intended to close without mortgage financing and that she had the cash available to consummate the sale. Under the circumstances the [c]ourt finds that the [p]laintiff complied with her obligations under the contract. The [c]ourt further finds that the seller had no lawful right to terminate the contract and refuse to close title.

14

In construing a contract, "[t]he court makes the determination whether a contractual term is clear or ambiguous." Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002) (citing Nester, supra, 301 N.J. Super. at 210). When the term is clear, a court is required to enforce the contract as written, giving the words their plain, ordinary meaning. Gibson v. Callaghan, 158 N.J. 662, 670 (1999). However, when the words are susceptible to more than one reasonable interpretation, the court must examine the document as a whole in resolving the ambiguity and must consider other external evidence, such as the relationship of the parties, the contractual objectives, and other attendant circumstances. Nester, supra, 301 N.J. Super. at 210. Still, the contractual language should not be tortured to create ambiguity. Ibid.

As the judge found, the terms of the contract did not call for written notice of plaintiff's election to proceed without the loan, it merely required the parties to agree, which they did. Since defendant had notice of plaintiff's election, the judge held plaintiff complied with the contract's terms. To be sure, had the judge imposed a requirement of written notice not required by the plain language of the contract, it would have been erroneous. See Gross, supra, 338 N.J. Super. at 484-86.

We review the grant of specific performance for an abuse of discretion. Estate of Cohen ex rel. Perelman v. Booth Computers, 421 N.J. Super. 134, 157 (App. Div.), certif. denied, 208 N.J. 370 (2011). While the "abuse of discretion standard defies precise definition," we may find an abuse of discretion when a decision is "made without a rational explanation," "rest[s] on an impermissible basis," or was "based upon a consideration of irrelevant or inappropriate factors." Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (internal quotation marks and citations omitted).

Specific performance is an equitable remedy that operates to compel one party to unwillingly transact with another and therefore, should be granted in only exceptional circumstances. See Centex Homes Corp. v. Boag, 128 N.J. Super. 385, 392-93 (Ch. Div. 1974) (citation omitted) (stating that "considerable caution should be used in decreeing the specific performance of agreements, and the court is bound to see that it really does the complete justice which it aims at, and which is the ground of its jurisdiction"). However, "[t]here is a virtual presumption, because of the uniqueness of land and the consequent inadequacy of monetary damages, that specific performance is the . . . appropriate remedy for . . . [a] breach of the contract to convey"

real property. <u>Friendship Manor, Inc. v. Greiman</u>, 244 <u>N.J. Super.</u> 104, 113 (App. Div. 1990), <u>certif. denied</u>, 126 <u>N.J.</u> 321 (1991).

To establish a right to specific performance, the party seeking the relief must demonstrate that the contract in question is valid and enforceable at law, and that the terms of the contract are clear. <u>Marioni v. 94 Broadway, Inc.</u>, 374 <u>N.J. Super.</u> 588, 598-99 (App. Div.), <u>certif. denied</u>, 183 <u>N.J.</u> 591 (2005). Thus, even if the parties had an enforceable contract, the remedy of specific performance is not automatic, as the decision is a discretionary one based on principles of equity. <u>Id.</u> at 599 ("[T]he right to specific performance turns not only on whether plaintiff has demonstrated a right to legal relief but also whether the performance of the contract represents an equitable result.").

Specific performance is infused with equitable considerations; the applicant "must stand in conscientious relation to his adversary; his conduct in the matter must have been fair, just and equitable, not sharp or aiming at unfair advantage." <u>Stehr v. Sawyer</u>, 40 <u>N.J.</u> 352, 357 (1963). Further, "[t]he long established rule is that the party who 'seeks performance of a contract for the conveyance of land must show himself ready, desirous, prompt and eager to perform the contract on his part.'" <u>Ridge Chevrolet-Oldsmobile, Inc. v. Scarano</u>, 238

The judge found the conditions requisite to satisfy specific

performance were met:

> Evaluation of the equities in this case favor the [p]laintiff. First, the parties were both represented by competent attorneys, each with many years of experience in handling residential and commercial real estate closings. They reviewed and approved the final terms of the sales contract and neither attorney sought to modify or change the mortgage contingency clause so as to require the type of written notice the [d]efendant now seeks to enforce. Second, from the date of execution of the contract on June 7, 2014[,] until the Notice of Termination was served on November 24, 2014, neither party suggested that there was an issue regarding the mortgage contingency clause. In fact the closing was proceeding in its normal course, with a loan application having been made and title work having been ordered. Prior to the receipt of the termination notice, neither [p]laintiff nor her attorney ever suspected that the [d]efendant was concerned that a loan commitment was not received within the time specified in the contract. In fact, it is reasonable to assume that the [d]efendant did not really care about said contingency because [p]laintiff had expressed her intent to close without mortgage financing sometime in July or August 2014. Thus, it seems abundantly clear that the [p]laintiff was lulled into believing that no further notices were needed and that the closing would take place when the title company completed its due diligence. Third, it is clear from the evidence that the real reason for seeking to terminate the contract was because the [d]efendant believed he could sell the property to another buyer

for substantially more than the $750,000 [p]laintiff had offered. The evidence clearly demonstrates that prior to sending the notice terminating contract, the [d]efendant had negotiated a new listing agreement and was marketing the property for sale. In fact, the [d]efendant would later enter into a new contract for [$1 million]. Defendant's conduct could be interpreted as violating the implied covenant of good faith and fair dealing. In this regard, our Court[] ha[s] held that "[e]very contract [entered into under the laws of this state] contains an implied covenant of good faith and fair dealing." Kalogeras v. 239 Broad Ave., L.L.C., 202 N.J. 349, 366[] (2010) [(citation omitted)]. "Good faith" imports "standards of decency, fairness or reasonableness" and "requires a party to refrain from 'destroying or injuring the right of the other party to receive' its contractual benefits." Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 109-10[] (2007). Finally, the [c]ourt concludes that an order compelling performance will not be harsh or oppressive to the [d]efendant. He is not being denied what he bargained for, the sale of his property for the total purchase price of $750,000. On the other hand, [p]laintiff would be denied what she has bargained for, the purchase of real property, for a reasonable price, that she intends to rehabilitate for residential and commercial use. Under the circumstances[,] this [c]ourt must conclude that it would be unfair and unjust to permit the [d]efendant to unilaterally terminate a contract for a breach of the mortgage contingency clause without affording the [p]laintiff an opportunity to cure the alleged breach within a reasonable period of time. This [c]ourt opts "to apply reasonableness to the situation" and concludes that the oral notice given to the [d]efendant was sufficient compliance with the mortgage contingency provision of the contract. Defendant must therefore be compelled to

A-2210-15T3

comply with the terms of the contract and deliver a deed at the time and place scheduled for closing. To do otherwise would result in the forfeiture of the [p]laintiff's rights, a result abhorred by equity. Shultz, supra, 193 N.J. Super. at 553[] (citing Bertrand v. Jones[,] 58 N.J. Super. 273, 281 (App. Div. 1959)).

In awarding specific performance, we are satisfied the judge exercised appropriate discretion by aptly weighing the equities and determining they aligned with plaintiff. See Stehr, supra, 40 N.J. at 357. We discern no error in the judge's determination the parties entered into a valid and enforceable contract and that the enforcement of the contract would not be "harsh or oppressive." See Marioni, supra, 374 N.J. Super. at 599 (citation omitted).[5]

Finally, we have considered defendant's argument relating to the dismissal of the counterclaim in light of the record and conclude it lacks sufficient merit to warrant consideration in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5] In reaching our decision, we reject as wholly without merit defendant's argument that enforcement of the contract was "oppressive" based upon his loss of $250,000.

20      A-2210-15T3